COOLEY LLP
WILLIAM K. PAO (252637)
(wpao@cooley.com)
ARIANA BUSTOS (345918)
(abustos@cooley.com)
355 S. Grand Avenue, Suite 900
Los Angeles, CA 90071-1560
Telephone: (213) 561-3250
Facsimile: (213) 561-3244

BRIAN M. FRENCH (*pro hac vice*)
(bfrench@cooley.com)
RONA S. LI (*pro hac vice*)
(rproper@cooley.com)
KATHERINE BECHTEL (*pro hac vice*)
(kbechtel@cooley.com)
55 Hudson Yards
New York, NY 10001-2157
Telephone: (212) 479-6000
Facsimile: (212) 479-6275

LUKE C. CADIGAN (*pro hac vice*)
(lcadigan@cooley.com)
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
Telephone: (617) 937-2300
Facsimile: (617) 937-2400

*Attorneys for Defendants John Shahidi, Nelk, Inc., Metacard, LLC, Nelk USA, Inc., and Kyle Forgeard*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| TRENTON SMITH, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN SHAHIDI, NELK, INC., METACARD, LLC, NELK USA, INC., and KYLE FORGEARD<br><br>Defendants. | Case No. 8:25-cv-161-FWS-DFM<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**<br><br>Courtroom: 10D<br>Judge: Hon. Fred W. Slaughter<br>Date: June 5, 2025<br>Time: 10:00 a.m. (PDT) |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

MEM. OF POINTS & AUTHORITIES ISO
DEFENDANTS' MTD
8:25-CV-161-FWS-DFM

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................. 1
II. BACKGROUND ............................................................................................... 1
    A. Defendants ............................................................................................. 1
    B. The Metacard Program .......................................................................... 2
    C. The Rescission Offer ............................................................................. 2
    D. This Lawsuit .......................................................................................... 3
III. LEGAL STANDARDS .................................................................................... 3
IV. ARGUMENT .................................................................................................... 5
    A. The Complaint Fails To State A Claim As To Any Pre-Sale Statement ............................................................................................... 5
        1. The Complaint Fails To Identify Any Pre-Sale Misrepresentation With Particularity .......................................... 6
        2. The Complaint Fails To Allege That Any Pre-Sale Statement Was False Or Misleading ................................................ 7
        3. The Complaint Fails To Allege That Any Defendant Acted With Scienter Or Negligence .................................................. 8
        4. The Complaint Fails To Allege That Plaintiff Relied On Any Pre-Sale Statement ................................................................ 9
    B. The Complaint Does Not Base A Claim On Any Post-Sale Statement ............................................................................................... 9
    C. The Complaint Fails To Allege A Fiduciary Relationship ................. 11
    D. The Complaint's CLRA Claim Fails Because Plaintiff Is Not Entitled To Equitable Relief ............................................................... 11
    E. Plaintiff's Claims Are Barred By Defendants' Rescission Offer ....... 12
V. CONCLUSION ............................................................................................... 13

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

- i -

MEM. OF POINTS & AUTHORITIES ISO
DEFENDANTS' MTD
8:25-CV-161-FWS-DFM

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Am. Apparel S'holder Litig.*,
  855 F. Supp. 2d 1043 (C.D. Cal. 2012) ................................................................. 10

*Ash v. N. Am. Title Co.*,
  168 Cal. Rptr. 3d 499 (Cal. Ct. App. 2014) ............................................................ 5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................ 3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................ 3

*Bergeron v. Monex Deposit Co.*,
  2020 WL 3655495 (C.D. Cal. Apr. 29, 2020) ......................................................... 5

*Beyer v. Symantec Corp.*,
  333 F. Supp. 3d 966 (N.D. Cal. 2018) .................................................................... 4

*Brakke v. Econ. Concepts*,
  153 Cal. Rptr. 3d 1 (Cal. Ct. App. 2013) ................................................................ 7

*Cansino v. Bank of Am.*,
  169 Cal. Rptr. 3d 619 (Cal. Ct. App. 2014) .......................................................... 10

*City of Hope Nat'l Med. Ctr. v. Genentech*,
  181 P.3d 142 (Cal. 2008) ...................................................................................... 11

*Coast Surgery Ctr. v. United Healthcare Ins.*,
  2024 WL 650174 (C.D. Cal. Jan. 5, 2024) ..................................................... 4, 6, 7

*In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig. (No. II)*,
  2021 WL 3878654 (9th Cir. Aug. 31, 2021) ......................................................... 12

*Coleman-Anacleto v. Samsung Elecs. Am.*,
  2017 WL 86033 (N.D. Cal. Jan. 10, 2017) ............................................................. 5

*In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*,
  689 F. Supp. 3d 760 (C.D. Cal. 2023) ............................................................ 12, 13

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

- ii -

MEM. OF POINTS & AUTHORITIES ISO
DEFENDANTS' MTD
8:25-CV-161-FWS-DFM

# TABLE OF AUTHORITIES
### continued

**Page(s)**

*Glen Holly Ent. v. Tektronix*,
　100 F. Supp. 2d 1086 (C.D. Cal. 1999) ................................................................. 4

*Glen Holly Ent. v. Tektronix*,
　352 F.3d 367 (9th Cir. 2003) ............................................................................... 10

*Golden W. Wings LLC v. ShiftPixy*,
　2023 WL 6787815 (C.D. Cal. Sept. 11, 2023) ...................................................... 4

*Guo v. Robl*,
　2023 WL 2683473 (C.D. Cal. Mar. 2, 2023) ........................................................ 5

*Harris v. PFI W. Stores*,
　2020 WL 3965022 (C.D. Cal. Apr. 9, 2020) ................................................... 12-13

*Hernandez v. Nissan N. Am.*,
　2023 WL 3806377 (C.D. Cal. Mar. 29, 2023) ...................................................... 9

*IDS v. AMResorts, LP*,
　2024 WL 4228238 (C.D. Cal. July 9, 2024) ......................................................... 8

*Kamath v. Itria Ventures, LLC*,
　2024 WL 590603 (N.D. Cal. Feb. 13, 2024) ....................................................... 11

*Kearns v. Ford Motor Co.*,
　567 F.3d 1120 (9th Cir. 2009) ................................................................... 3, 4, 6, 9

*Khoja v. Orexigen Therapeutics*,
　899 F.3d 988 (9th Cir. 2018) ................................................................................ 3

*Lolicel (Pty) Ltd. v. Stanmar Int'l [USA]*,
　2023 WL 3134599 (S.D. Cal. Apr. 27, 2023) ................................................... 6, 9

*Luken v. Christensen Grp.*,
　247 F. Supp. 3d 1158 (W.D. Wash. 2017) .......................................................... 11

*McCann v. Lucky Money*,
　29 Cal. Rptr. 3d 437 (Cal. Ct. App. 2005) .......................................................... 11

*Miron v. Herbalife Int'l*,
　11 F. App'x 927 (9th Cir. 2001) ............................................................................ 7

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

-iii-

MEM. OF POINTS & AUTHORITIES ISO
DEFENDANTS' MTD
8:25-CV-161-FWS-DFM

# TABLE OF AUTHORITIES
## continued

**Page(s)**

*OCM Principal Opportunities Fund, L.P. v. CIBC World Mkts. Corp.*,
   68 Cal. Rptr. 3d 828 (Cal. Ct. App. 2007) .................................................. 4

*Sollberger v. Wachovia Sec., LLC*,
   2010 WL 2674456 (C.D. Cal. June 30, 2010) ............................................. 3

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ..................................................................... 12

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ................................................................... 4, 6

*Tosh-Surryhne v. Abbott Lab'ys*,
   2011 WL 4500880 (E.D. Cal. Sept. 27, 2011) .......................................... 13

*Tsai v. Wang*,
   2017 WL 2587929 (N.D. Cal. June 14, 2017) ............................................ 9

*UMG Recordings v. Glob. Eagle Ent.*,
   117 F. Supp. 3d 1092 (C.D. Cal. 2015) ............................................... 4, 7, 8

*Vavak v. Abbott Lab'ys*,
   2011 WL 10550065 (C.D. Cal. June 17, 2011) ........................................ 13

*Velsaco v. Specialized Loan Servicing LLC*,
   2022 WL 19239735 (C.D. Cal. June 13, 2022) .......................................... 6

*Yuga Labs v. Ripps*,
   2023 WL 3316748 (C.D. Cal. Apr. 21, 2023) ............................................. 2

**Statutes**

California Consumers Legal Remedies Act ..................................................... *passim*

**Other Authorities**

Fed. R. Civ. P.
   9(b) ..................................................................................................... 3, 4, 6, 8
   12(b)(6) ........................................................................................................ 3

-iv-

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

MEM. OF POINTS & AUTHORITIES ISO
DEFENDANTS' MTD
8:25-CV-161-FWS-DFM

## I. INTRODUCTION

Fraud claims require specifics. This Complaint has none.

Plaintiff bought a Metacard NFT in January 2022. He now claims—vaguely—that he purchased it based on Defendants' promises of exclusive events, product discounts, and other perks. But his entire theory turns on supposed pre-sale misrepresentations that are nowhere in the Complaint. The Complaint never quotes a pre-sale statement—much less identifies who made it, when, where, or why it was false at the time. It never alleges that Plaintiff even saw a pre-sale statement before buying his Metacard. And it alleges nothing suggesting scienter or negligence.

What the Complaint does allege are *post*-sale statements and delivered perks. But post-sale statements are legally irrelevant; they could not have induced Plaintiff's earlier purchase. And the fact that Defendants delivered exactly what the Complaint says were promised—exclusive events, steep product discounts, and large cash giveaways—extinguishes his theory of fraud. To cap it off, after the broader NFT market collapsed, Defendants offered every Metacard holder (including Plaintiff) a full refund plus interest, mooting these claims.

Plaintiff may regret his purchase—and turning down a full refund. But regret does not plead fraud. The Complaint should be dismissed.

## II. BACKGROUND

### A. Defendants

Defendants John Shahidi and Kyle Forgeard built the Full Send brand—an online media powerhouse with millions of followers. ¶¶ 2-3.[1] Their company, Defendant Nelk, Inc., owns subsidiaries spanning the entertainment and merchandise industries. ¶ 13. Defendant Nelk USA, Inc. is one such subsidiary. ¶ 14. Defendant

---

[1] "¶" refers to paragraphs of the Complaint. Capitalized terms not defined herein have the same meaning as in the Complaint. Unless otherwise noted, all emphasis is added, and all internal citations, quotation marks, and alterations are omitted. Defendants accept Plaintiffs' well-pleaded allegations as true solely for purposes of this motion.

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

1

MEM. OF POINTS & AUTHORITIES ISO
DEFENDANTS' MTD
8:25-CV-161-FWS-DFM

Metacard, LLC was formed to sell Full Send Metacard NFTs ("Metacards"). ¶ 4.[2]

### B.     The Metacard Program

"Defendants launched the Metacards on January 19, 2022, and all 10,000 NFTs were sold within 10 minutes." ¶ 27. The Complaint does not specify what any Defendant actually said before the launch. But it vaguely asserts that Metacard holders were promised perks such as access to exclusive events, product discounts, and private forums. ¶¶ 5, 26.

The Complaint concedes that Defendants delivered on their promises. They arranged exclusive events, including performances by high-profile artists such as Snoop Dogg. ¶¶ 30, 33, 51. They provided substantial product discounts. ¶¶ 8, 36. They granted access to private forums. ¶ 42. And they conducted raffles and promotional giveaways—awarding $100,000 to one Metacard holder and more to others. ¶¶ 36-37, 52.

After the launch, Defendants discussed the Metacard program on social media and in private channels. ¶¶ 31-32, 34-35, 41-42, 63. They expressed enthusiasm about the Metacard program and aspirations for future products. *Id.* But the Complaint does not allege that Defendants sold any additional Metacards after the January 19, 2022 launch.

### C.     The Rescission Offer

In April 2024, in the wake of the broader NFT market collapse,[3] Defendants announced a new opportunity for Metacard holders, which became available on May 20, 2024. *See* ¶¶ 63-65; Declaration of Rona S. Li ("Li Decl."), Exs. 1-3. Defendants

---

[2] NFTs—or "non-fungible tokens"—are digital assets that can be bought and sold online. ¶ 6; *see generally Yuga Labs v. Ripps*, 2023 WL 3316748, at *5 (C.D. Cal. Apr. 21, 2023) (recognizing that NFTs have "documented commercial value" and are often "sold specifically for their connection to a particular brand, creator, or associated creative work").

[3] Phil Rosen, *Remember when NFTs sold for millions of dollars? 95% of the digital collectibles may now be worthless*, Business Insider (Sept. 20, 2023), https://markets.businessinsider.com/news/currencies/nft-market-crypto-digital-assets-investors-messari-mainnet-currency-tokens-2023-9.

invited all Metacard holders (including Plaintiff) to participate in a new product initiative or, if they preferred, to receive a full refund of their Metacard purchase price plus interest. *Id.* The offer was widely publicized—across social media, the Metacard Discord channel, and Defendants' website—and remained open for 30 days. *Id.*

### D. This Lawsuit

On January 29, 2025, Plaintiff filed this putative class action, asserting claims for fraud, breach of fiduciary duty, and violations of the California Consumers Legal Remedies Act ("CLRA"). ECF No. 1. The Complaint alleges that Defendants misrepresented the Metacard program before the January 19, 2022 sales, inducing Plaintiff to purchase one that day. ¶ 66. It also alleges that, after the sales, "Defendants['] continuing misrepresentation[s] were made, in part, to delay and [*sic*] discovery by Plaintiff or other class members." *Id.*

## III. LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts need not accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 1008 (9th Cir. 2018).

Because Plaintiff's claims sound in fraud, they must also meet Rule 9(b)'s heightened pleading standard, which requires Plaintiff to plead "the circumstances constituting fraud" with particularity. Fed. R. Civ. P. 9(b); *see, e.g.*, *Sollberger v. Wachovia Sec., LLC*, 2010 WL 2674456, at *7 (C.D. Cal. June 30, 2010) (applying Rule 9(b) to fiduciary duty claim sounding in fraud); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (applying Rule 9(b) to CLRA claims sounding in

fraud). That means specifying "the who, what, when, where, and how" of the alleged fraud. *Kearns*, 567 F.3d at 1124; *see Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (requiring "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations"); *Golden W. Wings LLC v. ShiftPixy*, 2023 WL 6787815, at *3 (C.D. Cal. Sept. 11, 2023) (Slaughter, J.) ("Rule 9(b) does not allow a complaint to lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant."). It also requires "set[ting] forth what is false or misleading about a statement, and why." *Beyer v. Symantec Corp.*, 333 F. Supp. 3d 966, 975 (N.D. Cal. 2018).

**Elements of Fraud.** Fraud claims require: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Coast Surgery Ctr. v. United Healthcare Ins.*, 2024 WL 650174, at *8 (C.D. Cal. Jan. 5, 2024) (Slaughter, J.). "The alleged misrepresentation must ordinarily be an affirmation of past or existing facts to be an actionable fraud claim; predictions as to future events are deemed opinions, and not actionable by fraud." *Glen Holly Ent. v. Tektronix*, 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999). Where, as here, the theory is promissory fraud, the complaint must allege "why the promise was false when made," which "requires pleading facts from which it can be inferred that the promisor had no intention of performing at the time the promise was made." *UMG Recordings v. Glob. Eagle Ent.*, 117 F. Supp. 3d 1092, 1108 (C.D. Cal. 2015) ("Mere nonperformance of a promise does not suffice to show the falsity of the promise."). *Id.* Reliance requires allegations that the plaintiff "actually relied on the defendant's misrepresentations," and that he was "reasonable in doing so." *OCM Principal Opportunities Fund, L.P. v. CIBC World Mkts. Corp.*, 68 Cal. Rptr. 3d 828, 855 (Cal. Ct. App. 2007).

**Elements of Breach of Fiduciary Duty.** Fiduciary duty claims require (i) the existence of a fiduciary duty, (ii) a breach of that duty, and (iii) damage proximately caused by the breach. *See Guo v. Robl*, 2023 WL 2683473, at *5 (C.D. Cal. Mar. 2, 2023) (Slaughter, J.). "A fiduciary relationship is created where a person reposes trust and confidence in another and the person in whom such confidence is reposed obtains control over the other person's affairs." *Id.* "Before a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." *Id.* "The breach of fiduciary duty can be based upon either negligence or fraud depending on the circumstances." *Ash v. N. Am. Title Co.*, 168 Cal. Rptr. 3d 499, 513 (Cal. Ct. App. 2014).

**Elements of California Consumers Legal Remedies Act.** CLRA claims require (i) a misrepresentation, (ii) the defendant's knowledge of it, (iii) the plaintiff's reliance, and (iv) resulting damages. *See Bergeron v. Monex Deposit Co.*, 2020 WL 3655495, at *3 (C.D. Cal. Apr. 29, 2020); *Coleman-Anacleto v. Samsung Elecs. Am.*, 2017 WL 86033, at *7 (N.D. Cal. Jan. 10, 2017) ("A plaintiff must sufficiently allege a defendant's knowledge at the time of sale in order to state a CLRA claim under an affirmative misrepresentation theory just as a plaintiff must do so in order to state a CLRA claim under a fraudulent omission theory.").

## IV. ARGUMENT

Plaintiff's claims rise and fall on what was said before he bought his Metacard. But the Complaint never identifies a pre-sale statement. That is dispositive. Everything else—from post-sale comments, to generalities and regret—is legally irrelevant.

### A. The Complaint Fails To State A Claim As To Any Pre-Sale Statement

Plaintiff claims he was misled into buying a Metacard on January 19, 2022. *E.g.*, ¶¶ 1, 8, 26, 66. But the Complaint never says who misled him, when it happened,

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

-5-

MEM. OF POINTS & AUTHORITIES ISO
DEFENDANTS' MTD
8:25-CV-161-FWS-DFM

or what was actually said. Nor does it adequately allege that any pre-sale statement was false when made, that Plaintiff relied on one in deciding to buy, or that any Defendant acted with scienter or negligence. The pleading failure is total.

### 1. The Complaint Fails To Identify Any Pre-Sale Misrepresentation With Particularity

Rule 9(b) demands specifics: who said what, when, where, and why it was false. Fed. R. Civ. P. 9(b); *see Kearns*, 567 F.3d at 1124; *Swartz*, 476 F.3d at 764. This Complaint provides no specifics.

It vaguely claims that "Defendants promised" future benefits like "exclusive access to events, venues, and products." ¶¶ 5, 26. But it never says which Defendant made those promises, when or where they were made, or the precise words used.[4] This fails Rule 9(b) from every angle. *See Coast Surgery*, 2024 WL 650174, at *9 ("[T]he FAC does not adequately allege the content of the statements purportedly made by Defendants' representatives, the names of the representatives that Plaintiff spoke with, the procedures at issue, and the difference between what Plaintiff believes the UCR rate should have been for each procedure and what Defendants actually paid."); *Lolicel (Pty) Ltd. v. Stanmar Int'l [USA]*, 2023 WL 3134599, at *8 (S.D. Cal. Apr. 27, 2023) ("Plaintiff must identify the specific contents of Defendants' misrepresentations, state specifically when those misrepresentations were used, where Defendants used those words, how those words were misleading, and why those words were false."); *Velsaco v. Specialized Loan Servicing LLC*, 2022 WL 19239735, at *5 (C.D. Cal. June 13, 2022) ("Plaintiffs do not specify what was said or written, or when it was said or written, or to whom it was said or written.").

---

[4] The best Plaintiff can muster is Paragraph 26—and even that omits every detail Rule 9(b) requires. *See* ¶ 26 (alleging that "Defendants promised that Metacards would unlock certain perks and amenities to their holders," and listing several perks). It never quotes a statement, identifies a speaker, or specifies when the statement was made, where it appeared, or why it was false when made. It does not even say whether these supposed promises were made before Plaintiff's purchase, let alone that he saw and relied on them.

### 2. The Complaint Fails To Allege That Any Pre-Sale Statement Was False Or Misleading

Plaintiff's claims require a false statement—one that was untrue when made. *Supra* Part III (collecting cases). The Complaint alleges none.

It concedes that Defendants delivered numerous benefits, including exclusive events, steep product discounts, and large cash giveaways. ¶¶ 8, 30, 33, 36-37, 51-52. It acknowledges that Defendants launched a business venture. ¶¶ 44, 53, 63-65. And it admits that Defendants provided access to private forums. ¶ 42.

But the Complaint never explains how these benefits fell short of whatever was promised before Plaintiff's purchase. To the contrary, the alleged promises mirror the benefits the Complaint admits were delivered. *Compare* ¶ 26 (alleging *promised* events, discounts, and forums), *with* ¶¶ 8, 30, 33, 36-37, 44, 51-53, 63-65 (alleging *delivered* events, discounts, forums, and invitations). That alone defeats any misrepresentation claim. *See Coast Surgery*, 2024 WL 650174, at *9 (dismissing where complaint failed to specify "the difference between what Plaintiff believes the UCR rate should have been for each procedure and what Defendants actually paid"). Nor does the Complaint allege facts showing Defendants never intended to provide more benefits at the time any promise was made. *See Miron v. Herbalife Int'l*, 11 F. App'x 927, 930 (9th Cir. 2001) ("[T]o state a viable claim for misrepresentation, a plaintiff must show that the defendant did not intend to perform the promises at the time they were made"); *UMG Recordings*, 117 F. Supp. 3d at 1108 ("Mere nonperformance of a promise does not suffice to show the falsity of the promise."); *see also Brakke v. Econ. Concepts*, 153 Cal. Rptr. 3d 1, 6 (Cal. Ct. App. 2013) ("[T]o be actionable, a misrepresentation must be of an existing fact, not an opinion or prediction of future events.").

The Complaint does not even allege *when* any promised benefits were supposed to arrive. It details perks Defendants delivered within the first two years. ¶¶ 8, 30, 33, 36-37, 51, 52. But did Defendants set themselves a two-year deadline?

Say that nothing more would come later? Plaintiff makes no such allegation because he cannot. Plaintiff is not so much pleading fraud as impatience.

### 3. The Complaint Fails To Allege That Any Defendant Acted With Scienter Or Negligence

Plaintiff's claims require fraudulent intent, knowledge, and/or negligence. *Supra* Part III (collecting cases). The Complaint alleges none of it.

It pleads no facts suggesting Defendants disbelieved (or should have disbelieved) any pre-sale statement—whatever they were—when they were made. The allegations are purely conclusory. *E.g.*, ¶ 59 ("Proof of Defendants' scienter comes, in part, from podcasts in which Founder Defendants were interviewed. These podcasts show, among other things, that Metacard was a fraudulent scheme since its inception, Metacards have at all times been patently worthless, and that no investor would have purchased any Metacards absent Defendants' fraudulent acts."); ¶ 89 ("Defendants knew they were simply seeking to raise money and not provide anything substantively of value in response."). "Although intent can be averred generally under Rule 9(b), a plaintiff must point to facts which show that defendant harbored an intention not to be bound by terms of the contract at formation." *UMG Recordings*, 117 F. Supp. 3d at 1109-10; *see IDS v. AMResorts, LP*, 2024 WL 4228238, at *16 (C.D. Cal. July 9, 2024) (Rule 9(b) requires "facts from which an inference of scienter could be drawn."). This Complaint points to none. *See id.* at *17 ("[The FAC] does not allege that Fernandez and Torres made inconsistent contemporaneous statements, or that they later conceded that when they made those statements they knew that the statements were false. Instead, the FAC only alleges that these individuals 'had no intention of honoring' their promises at the time of making them. This conclusory allegation does not meet Plaintiff's burden under Rule 9(b) of setting forth facts from which an inference of scienter could be drawn.").

Again, the Complaint openly admits that Defendants provided numerous benefits to Metacard holders. ¶¶ 8, 30, 33, 36-37, 44, 51-53, 63-65. That forecloses

any claim of fraudulent intent or negligence. *See Tsai v. Wang*, 2017 WL 2587929, at *6 (N.D. Cal. June 14, 2017) ("[T]he allegations in the complaint fail to give rise to a plausible inference that Defendant did not intend to honor his promises to deliver wines to Plaintiff at the time he made them.").

### 4. The Complaint Fails To Allege That Plaintiff Relied On Any Pre-Sale Statement

Plaintiff's claims also require reliance. *Supra* Part III (collecting cases). The Complaint must allege that Plaintiff actually saw and relied on a specific misrepresentation in deciding to buy. *Id.* But it never does.

It vaguely asserts that Defendants made statements on various platforms. ¶¶ 25, 26, 28, 46, 48, 49. But it never claims Plaintiff read or heard any of them before purchasing his Metacard. That should come as no surprise: all the quoted statements came after the sale, and the Complaint never even quotes a pre-sale statement. This is fatal to Plaintiff's claims. *See Kearns*, 567 F.3d at 1126-27 (dismissing where plaintiff "failed to specify which sales material he relied upon in making his decision to buy a CPO vehicle"); *Hernandez v. Nissan N. Am.*, 2023 WL 3806377, at *4 (C.D. Cal. Mar. 29, 2023) (dismissing where complaint "fails to identify when Plaintiffs viewed the marketing materials"); *Lolicel*, 2023 WL 3134599, at *8 (dismissing where "Plaintiff has not particularly identified which misrepresentations upon which it was justified in relying on").

### B. The Complaint Does Not Base A Claim On Any Post-Sale Statement

Plaintiff's claims are necessarily premised on alleged misrepresentations made before he bought his Metacard on January 19, 2022, thereby inducing his purchase. *E.g.*, ¶¶ 1, 8, 26, 66. To be sure, there is no shortage of rhetoric about post-sale statements in the Complaint. *E.g.*, ¶¶ 29, 31, 32, 34, 35, 36, 41, 42, 49, 50, 61. But post-sale statements could not have induced Plaintiff's earlier purchase, and he never contends otherwise.

On its face, the Complaint's claims are based on Plaintiff's Metacard purchase on January 19, 2022. *E.g.*, ¶ 85 ("As a result of Defendants' wrongful acts in concealing and misrepresenting these facts, Plaintiff purchased a Metacard . . . ."); ¶ 90 ("As a result, Plaintiff and Class Members relied on those false representations (they are identified above) and purchased the Metacards . . . ."); ¶ 100 ("Had Plaintiff and the Class Members known of the properties of the Metacards, they would not have proceeded with purchasing . . . ."). Nowhere does it allege that any post-sale statement played a role in Plaintiff's earlier purchase decision. It appears these post-sale allegations were included in an effort to plead around the applicable statutes of limitations. ¶ 66 ("Defendants['] continuing misrepresentation[s] were made, in part, to delay and [*sic*] discovery by Plaintiff or other class members.").

Because Plaintiff's claims rise and fall on the pre-sale statements (such as they are), the Court need not analyze the post-sale statements. But for the record, no post-sale statement is actionable. All are vague expressions of optimism, predictions, or opinions—not concrete misrepresentations of fact. Many are classic puffery. *See Glen Holly Ent. v. Tektronix*, 352 F.3d 367, 379 (9th Cir. 2003) (affirming dismissal where "statements were generalized, vague and unspecific assertions, constituting mere 'puffery' upon which a reasonable consumer could not rely"). Others concern future plans, which are not actionable unless Defendants knew at the time they would never follow through. *See In re Am. Apparel S'holder Litig.*, 855 F. Supp. 2d 1043, 1072 (C.D. Cal. 2012) (words such as "pursuing," "looking to build," "going to be," and "committed to" are goals, not facts); *Cansino v. Bank of Am.*, 169 Cal. Rptr. 3d 619, 626 (Cal. Ct. App. 2014) ("Statements or predictions regarding future events are deemed to be mere opinions which are not actionable."). Some are not even attributed to Defendants but to others like "Judd." ¶ 38. None is false or misleading. And in any event, Plaintiff does not allege that he ever saw a post-sale statement.

### C. The Complaint Fails To Allege A Fiduciary Relationship

Plaintiff's fiduciary duty claim fails for an independent reason: Defendants did not owe Plaintiff a fiduciary duty. Fiduciary duties arise where one party "knowingly undertake[s] to act on behalf and for the benefit of another" or "enter[s] into a relationship which imposes that undertaking as a matter of law." *City of Hope Nat'l Med. Ctr. v. Genentech*, 181 P.3d 142, 150 (Cal. 2008). None of that is alleged here.

"California law is clear that an arm's length commercial transaction does not give rise to a fiduciary relationship." *Kamath v. Itria Ventures, LLC*, 2024 WL 590603, at *6 (N.D. Cal. Feb. 13, 2024); *see McCann v. Lucky Money*, 29 Cal. Rptr. 3d 437, 449 (Cal. Ct. App. 2005) ("Generally, there is no fiduciary owed duty in a purely commercial situation."); *see id.* (no fiduciary duty where "the nature of the relationship between the customer and the telegram company was in the nature of an arms-length transaction in which plaintiff bargained for defendant's promise to transmit a certain sum of money"). Plaintiff bought Defendants' product at arms' length. That is everyday commerce, not a fiduciary relationship.

Plaintiff tries to evade this black-letter rule by labeling Defendants his "agent." ¶ 83. But an agency relationship requires "mutual consent, and control by the principal of the agent." *Luken v. Christensen Grp.*, 247 F. Supp. 3d 1158, 1163 (W.D. Wash. 2017). The Complaint alleges neither. *See id.* at 1163-64 (dismissing where plaintiff "[had] not suggested, much less pled, that the parties agreed that [defendant] or its officers agreed to be [plaintiff's] agent, or that [defendant] agreed to be their principal," and did not "plausibly allege that [plaintiff] had the requisite control over the defendants to make them his agent"). Accepting Plaintiff's theory would turn every commercial transaction into a fiduciary relationship. That is not the law.

### D. The Complaint's CLRA Claim Fails Because Plaintiff Is Not Entitled To Equitable Relief

Plaintiff's CLRA claim fails for the independent reason that he is not entitled to the equitable relief he seeks. *See* ¶ 103 (seeking an injunction, restitution, and

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

-11-

MEM. OF POINTS & AUTHORITIES ISO
DEFENDANTS' MTD
8:25-CV-161-FWS-DFM

disgorgement under the CLRA).[5]

To obtain equitable relief, Plaintiff must show that legal remedies are inadequate. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 843-44 (9th Cir. 2020). But he does not even attempt to do so. "Monetary damages are generally an adequate remedy for past harm, especially where the legal and equitable claims asserted are duplicative." *In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*, 689 F. Supp. 3d 760, 777 (C.D. Cal. 2023). Here, Plaintiff seeks the same monetary damages—on the same basis and in the same amount—as in his request for equitable relief. ¶¶ 66-67, 103; *see Sonner*, 971 F.3d at 844 ("Sonner fails to explain how the same amount of money for the exact same harm is inadequate or incomplete . . . ."). This dooms not just his request for equitable relief, but his CLRA claim as a whole.

Plaintiff's request for injunctive relief is doubly misguided because he lacks standing to make it. "To establish Article III standing to obtain an injunction, Plaintiffs must prove that they face a threat of future injury that is actual and imminent." *Ford Motor*, 689 F. Supp. 3d at 777. That is not present here, as Plaintiff does not allege plans "to purchase [another Metacard] in the future." *In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig. (No. II)*, 2021 WL 3878654, at *2 (9th Cir. Aug. 31, 2021). "Without any stated desire to purchase [one] in the future, [Plaintiff] do[es] not have standing to pursue injunctive relief." *Id.*

### E. Plaintiff's Claims Are Barred By Defendants' Rescission Offer

Even if Plaintiff had stated a claim—and he has not—he had the chance to be made whole. Last year, Defendants offered every Metacard purchaser a full refund of their purchase price plus interest. That forecloses Plaintiff's claims.

Courts hold that a party who declines to accept a refund offer has no justiciable misrepresentation claim. *See, e.g.*, *Harris v. PFI W. Stores*, 2020 WL 3965022, at *3

---

[5] While the Complaint also cites CLRA Section 1770(a)(19) concerning "unconscionable provisions," ¶ 101(g), it never identifies the provision at issue or explains why it is unconscionable.

(C.D. Cal. Apr. 9, 2020) (no standing where plaintiff "would have been fully compensated by the refund offer she received from [defendant] . . . prior to the commencement of this case"); *Vavak v. Abbott Lab'ys*, 2011 WL 10550065, at *3 (C.D. Cal. June 17, 2011) (claims moot where plaintiff rejected refund offer); *Tosh-Surryhne v. Abbott Lab'ys*, 2011 WL 4500880, at *3 (E.D. Cal. Sept. 27, 2011) ("When a defendant offers to make plaintiffs whole, that tender ends any dispute over restitution."); *see also Ford Motor*, 689 F. Supp. 3d at 776-77 (plaintiff could not seek damages under the CLRA where he declined defendant's refund offer).

That is exactly what happened here. Defendants publicized a refund offer across social media, the Metacard Discord channel, and their website—and kept it open for 30 days. *See* Li Decl., Exs. 1-3; ¶¶ 63-65. Plaintiff was eligible for a full refund plus interest. He chose not to take it. That ends the matter.

## V. CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

| | |
|---|---|
| Dated: April 17, 2025 | Respectfully submitted, |
| | COOLEY LLP |
| | */s/ William K. Pao* |
| | WILLIAM K. PAO (252637)<br>(wpao@cooley.com)<br>ARIANA BUSTOS (345918)<br>(abustos@cooley.com)<br>355 S. Grand Avenue, Suite 900<br>Los Angeles, CA 90071-1560<br>Telephone: (213) 561-3250<br>Facsimile: (213) 561-3244 |
| | BRIAN M. FRENCH (*pro hac vice*)<br>(bfrench@cooley.com)<br>RONA S. LI (*pro hac vice*)<br>(rproper@cooley.com)<br>KATHERINE BECHTEL (*pro hac vice*)<br>(kbechtel@cooley.com)<br>55 Hudson Yards<br>New York, NY 10001-2157<br>Telephone: (212) 479-6000<br>Facsimile: (212) 479-6275 |
| | LUKE C. CADIGAN (*pro hac vice*)<br>(lcadigan@cooley.com)<br>500 Boylston Street, 14th Floor<br>Boston, MA 02116-3736<br>Telephone: (617) 937-2300<br>Facsimile: (617) 937-2400 |
| | *Attorneys for Defendants John Shahidi, Nelk, Inc., Metacard, LLC, Nelk USA, Inc., and Kyle Forgeard* |

## L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this brief contains 4,185 words, which complies with the word limit of L.R. 11-6.1.

Dated: April 17, 2025                    COOLEY LLP

/s/ William K. Pao
WILLIAM K. PAO (252637)
(wpao@cooley.com)
355 S. Grand Avenue, Suite 900
Los Angeles, CA 90071-1560
Telephone: (213) 561-3250
Facsimile: (213) 561-3244

*Attorneys for Defendants John Shahidi, Nelk, Inc., Metacard, LLC, Nelk USA, Inc., and Kyle Forgeard*