COOLEY LLP
WILLIAM K. PAO (252637)
(wpao@cooley.com)
ARIANA BUSTOS (345918)
(abustos@cooley.com)
355 S. Grand Avenue, Suite 900
Los Angeles, CA 90071-1560
Telephone:   (213) 561-3250
Facsimile:    (213) 561-3244

BRIAN M. FRENCH (*pro hac vice*)
(bfrench@cooley.com)
RONA S. LI (*pro hac vice*)
(rproper@cooley.com)
KATHERINE BECHTEL (*pro hac vice*)
(kbechtel@cooley.com)
55 Hudson Yards
New York, NY 10001-2157
Telephone: (212) 479-6000
Facsimile: (212) 479-6275

LUKE C. CADIGAN (*pro hac vice*)
(lcadigan@cooley.com)
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
Telephone: (617) 937-2300
Facsimile: (617) 937-2400

*Attorneys for Defendants John Shahidi, Nelk, Inc., Metacard, LLC, Nelk USA, Inc., and Kyle Forgeard*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| TRENTON SMITH and MICHAEL BURROW, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>          vs.<br><br>JOHN SHAHIDI, NELK, INC., METACARD, LLC, NELK USA, INC., and KYLE FORGEARD<br><br>                    Defendants. | Case No. 8:25-cv-161-FWS-DFM<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>Courtroom: 10D<br>Judge:     Hon. Fred W. Slaughter<br>Date:      September 18, 2025<br>Time:      10:00 a.m. |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

MEM. OF POINTS & AUTHORITIES ISO
DEFENDANTS' MTD First Am. COMPL.
8:25-CV-161-FWS-DFM

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................. 1

II.   BACKGROUND ................................................................................. 1

      A.   Defendants ................................................................................. 1

      B.   The Metacard Program ............................................................. 2

      C.   The Rescission Offer ................................................................ 2

      D.   This Lawsuit .............................................................................. 3

      E.   The Duplicative State Court Lawsuit ....................................... 3

III.  LEGAL STANDARDS ....................................................................... 4

IV.   ARGUMENT ...................................................................................... 8

      A.   The AC Fails To State A Claim As To Any Pre-Sale Statement ......... 8

           1.   The AC Fails To Allege That Any Pre-Sale Statement Was False Or Misleading ................... 8

           2.   The AC Fails To Allege That Any Defendant Acted With Scienter Or Negligence ................... 11

           3.   The AC Fails To Allege That Plaintiff Relied On Any Pre-Sale Statement ................... 12

      B.   The AC Does Not Base A Claim On Any Post-Sale Statement ......... 13

      C.   The AC Fails To Allege A Fiduciary Relationship ................... 14

      D.   The AC's CLRA Claim Fails Because Plaintiffs Are Not Entitled To Equitable Relief ................... 15

      E.   The AC Fails To Allege Breach Of Contract ........................... 16

      F.   The AC's Civil Conspiracy Claim Fails Because Plaintiffs Do Not Allege An Underlying Tort or Basic Details About the Conspiracy ................... 17

      G.   Plaintiffs' Claims Are Barred By Defendants' Rescission Offer ....... 18

V.    CONCLUSION ................................................................................. 19

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

- i -

MEM. OF POINTS & AUTHORITIES ISO
DEFENDANTS' MTD FIRST AM. COMPL.
8:25-CV-161-FWS-DFM

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Apparel S'holder Litig.*,
  855 F. Supp. 2d 1043 (C.D. Cal. 2012) ........................................... 11, 14

*ARF Dashnaktsutyun, W. U.S.A. v. Armenian Revolutionary Fed'n WUSA*,
  2023 WL 4155366 (C.D. Cal. May 26, 2023) ........................................ 7, 17-18

*Ash v. N. Am. Title Co.*,
  168 Cal. Rptr. 3d 499 (Cal. Ct. App. 2014) ........................................ 6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................ 4

*Becton, Dickinson & Co. v. Cytek Biosciences*,
  2020 WL 1877707 (N.D. Cal. Apr. 15, 2020) ........................................ 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................ 4

*Bergeron v. Monex Deposit Co.*,
  2020 WL 3655495 (C.D. Cal. Apr. 29, 2020) ........................................ 6

*Beyer v. Symantec Corp.*,
  333 F. Supp. 3d 966 (N.D. Cal. 2018) ........................................ 4

*BMA LLC v. HDR Glob. Trading Ltd.*,
  2021 WL 949371 (N.D. Cal. Mar. 12, 2021) ........................................ 10

*Brakke v. Econ. Concepts, Inc.*,
  153 Cal. Rptr. 3d 1 (Cal. Ct. App. 2013) ........................................ 6, 9-10

*City of Hope Nat'l Med. Ctr. v. Genentech*,
  181 P.3d 142 (Cal. 2008) ........................................ 14

*Coast Surgery Ctr. v. United Healthcare Ins.*,
  2024 WL 650174 (C.D. Cal. Jan. 5, 2024) ........................................ 5, 9

*In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig. (No. II)*,
  2021 WL 3878654 (9th Cir. Aug. 31, 2021) ........................................ 16

**MEM. OF POINTS & AUTHORITIES ISO
DEFENDANTS' MTD FIRST AM. COMPL.
8:25-CV-161-FWS-DFM**

1

## TABLE OF AUTHORITIES
### continued

2

Page(s)

3

*Coleman-Anacleto v. Samsung Elecs. Am.*,

4

2017 WL 86033 (N.D. Cal. Jan. 10, 2017) ............................................. 6

5

*In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab.*
*Litig.*,

6

689 F. Supp. 3d 760 (C.D. Cal. 2023) ............................................. 15, 18

7

*Glen Holly Ent. v. Tektronix*,

8

100 F. Supp. 2d 1086 (C.D. Cal. 1999) ............................................. 5

9

*Glen Holly Ent. v. Tektronix*,

10

352 F.3d 367 (9th Cir. 2003) ............................................. 5-6, 11, 13

11

*Golden W. Wings LLC v. ShiftPixy*,

12

2023 WL 6787815 (C.D. Cal. Sept. 11, 2023) ............................................. 4

13

*Grapevine Educ., LLC v. Educ. Ventures, LLC*,

14

2023 WL 5167242 (S.D. Cal. Feb. 17, 2023) ............................................. 7, 16-17

15

*Guo v. Robl*,

16

2023 WL 2683473 (C.D. Cal. Mar. 2, 2023) ............................................. 6

17

*Harris v. PFI W. Stores*,

2020 WL 3965022 (C.D. Cal. Apr. 9, 2020) ............................................. 18

18

*Hernandez v. Nissan N. Am.*,

19

2023 WL 3806377 (C.D. Cal. Mar. 29, 2023) ............................................. 12

20

*Husary v. Shahidi*,

21

No. 30-2025-01487294-CU-BT-CXC (Cal. Super. Ct. June 2,

22

2025) ............................................. 3

23

*IDS v. AMResorts, LP*,

24

2024 WL 4228238 (C.D. Cal. July 9, 2024) ............................................. 11-12

25

*Indigo Grp. USA v. Polo Ralph Lauren Corp.*,

26

2011 WL 13128301 (C.D. Cal. Oct. 25, 2011) ............................................. 5, 11, 14

27

*Kamath v. Itria Ventures, LLC*,

2024 WL 590603 (N.D. Cal. Feb. 13, 2024) ............................................. 14

28

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

-iii-

MEM. OF POINTS & AUTHORITIES ISO
DEFENDANTS' MTD FIRST AM. COMPL.
8:25-CV-161-FWS-DFM

1

**TABLE OF AUTHORITIES**
**continued**

2

**Page(s)**

3

*Kaui Scuba Ctr. v. Padi Ams.,*

4

2011 WL 13227827 (C.D. Cal. Mar. 10, 2011) ...................................... 17

5

*Kearns v. Ford Motor Co.,*

6

567 F.3d 1120 (9th Cir. 2009) ......................................................... 4, 12

7

*Khoja v. Orexigen Therapeutics,*

8

899 F.3d 988 (9th Cir. 2018) ................................................................. 4

9

*Kidron v. Movie Acquisition Corp.,*

40 Cal. App. 4th 1571 (1995) ................................................................. 7

10

*Liberty City Movie, LLC v. U.S. Bank, N.A.,*

11

824 F. App'x 505 (9th Cir. 2020) ................................................... 7, 17

12

*Lobstein v. Wash. Mut. Mortg. Pass-Through Certificates WMALT*

13

    *Series 2007-OC1,*

    2020 WL 5913897 (C.D. Cal. Aug. 27, 2020), *aff'd,* 2021 WL

14

    5405488 (9th Cir. Nov. 18, 2021) ..................................................... 17

15

*Lolicel (Pty) Ltd. v. Stanmar Int'l [USA],*

16

2023 WL 3134599 (S.D. Cal. Apr. 27, 2023) ................................... 12-13

17

*Luken v. Christensen Grp.,*

18

247 F. Supp. 3d 1158 (W.D. Wash. 2017) ..................................... 14-15

19

*McCann v. Lucky Money,*

20

29 Cal. Rptr. 3d 437 (Cal. Ct. App. 2005) ........................................ 14

21

*Miron v. Herbalife Int'l,*

22

11 F. App'x 927 (9th Cir. 2001) .......................................................... 9

23

*Murphy v. Am. Gen. Life Ins. Co.,*

74 F. Supp. 3d 1267 (C.D. Cal. 2015) ................................................ 18

24

*Newcal Indus. v. Ikon Off. Sol.,*

25

513 F.3d 1038 (9th Cir. 2008) .............................................................. 5

26

*OCM Principal Opportunities Fund, L.P. v. CIBC World Mkts. Corp.,*

27

68 Cal. Rptr. 3d 828 (Cal. Ct. App. 2007) ........................................... 5

28

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

-iv-

**MEM. OF POINTS & AUTHORITIES ISO**
**DEFENDANTS' MTD FIRST AM. COMPL.**
**8:25-CV-161-FWS-DFM**

**TABLE OF AUTHORITIES**
continued

**Page(s)**

*S.F. Design Ctr. Assocs. v. Portman Cos.*,
  50 Cal. Rptr. 2d 716 (Cal Ct. App. 1995) .............................................................. 5

*Signal Hill Serv. v. Macquarie Bank Ltd.*,
  2013 WL 12244056 (C.D. Cal. June 12, 2013)................................................. 15

*Sollberger v. Wachovia Sec., LLC*,
  2010 WL 2674456 (C.D. Cal. June 30, 2010)........................................................ 4

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020)................................................................................. 15

*Soper v. United Airlines*,
  2024 WL 3305770 (C.D. Cal. Apr. 19, 2024)................................................. 7, 16

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007)................................................................................... 4

*In re Syntex Corp. Sec. Litig.*,
  855 F. Supp. 1086 (N.D. Cal. 1994)..................................................................... 11

*Tosh-Surryhne v. Abbott Lab'ys*,
  2011 WL 4500880 (E.D. Cal. Sept. 27, 2011) ..................................................... 18

*Tsai v. Wang*,
  2017 WL 2587929 (N.D. Cal. June 14, 2017) ..................................................... 12

*UMG Recordings v. Glob. Eagle Ent.*,
  117 F. Supp. 3d 1092 (C.D. Cal. 2015)...................................................... 5, 9, 11

*Vavak v. Abbott Lab'ys*,
  2011 WL 10550065 (C.D. Cal. June 17, 2011)................................................... 18

*Wasco Prods. v. Southwall Techs.*,
  435 F.3d 989 (9th Cir. 2006)................................................................................... 7

*Yuga Labs v. Ripps*,
  2023 WL 3316748 (C.D. Cal. Apr. 21, 2023)........................................................ 2

*Zo Skin Health v. ForeverYoung Laser Ctr., Weight Mgmt. & Med.
  Spa, LLC*,
  2022 WL 18397631 (C.D. Cal. Dec. 7, 2022) ..................................................... 17

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

# TABLE OF AUTHORITIES
**continued**

**Page(s)**

**Statutes**

California Consumers Legal Remedies Act ......................................................*passim*

California's Unfair Competition Law........................................................................ 4

**Other Authorities**

Fed. R. Civ. P.
    8 ............................................................................................................. 10
    9(b).........................................................................................................*passim*
    12(b)(6) .................................................................................................... 4

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

-vi-

MEM. OF POINTS & AUTHORITIES ISO
DEFENDANTS' MTD FIRST AM. COMPL.
8:25-CV-161-FWS-DFM

## I.    INTRODUCTION

Far from pleading fraud, the Amended Complaint ("AC") squarely alleges that Defendants told Plaintiffs the truth. This case should be dismissed.

Plaintiffs claim they bought Metacard NFTs based on Defendants' promises of future perks. Yet the AC repeatedly admits Defendants *delivered* those perks— everything from access to exclusive events and forums, to steep product discounts and large cash giveaways. And while Plaintiffs say they had hoped for more by now, Defendants never set a deadline. To the contrary, they described Metacard as a "long term play" they intended to run "for years and years and years." Worse yet, Plaintiffs allege no facts—not one—showing that Defendants knew any promise would go unfulfilled. That is a black-letter requirement for misrepresentation claims based on future non-performance, and it is not met here.

Plaintiffs' contract and conspiracy claims fare no better. They fall far short of pleading breach of contract. And without an underlying tort, their conspiracy claim fails as a matter of law.

For these reasons—and more below—the AC should be dismissed with prejudice.

## II.    BACKGROUND

### A.    Defendants

Defendants John Shahidi and Kyle Forgeard built the Full Send brand— an online media powerhouse with millions of followers. ¶¶ 2-3.[1] Their company, Defendant Nelk, Inc., owns subsidiaries spanning the entertainment and merchandise industries. ¶ 13. Defendant Nelk USA, Inc. is one such subsidiary. ¶ 14. Defendant

---

[1] "¶" refers to paragraphs of the AC. Capitalized terms not defined herein have the same meaning as in the AC. Unless otherwise noted, all emphasis is added, and all internal citations, quotation marks, and alterations are omitted. Defendants accept Plaintiffs' well-pleaded allegations as true solely for purposes of this motion.

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

1

MEM. OF POINTS & AUTHORITIES ISO
DEFENDANTS' MTD FIRST AM. COMPL.
8:25-CV-161-FWS-DFM

Metacard, LLC was formed to sell Full Send Metacard NFTs ("Metacards"). ¶ 4.[2]

## B.    The Metacard Program

"Defendants launched the Metacards on January 19, 2022, and all 10,000 NFTs were sold within 10 minutes." ¶ 46. The AC alleges that on January 18, 2022, Defendants promised that Metacard holders would receive perks such as access to future projects, merchandise, and rewards. ¶¶ 32-35, 38-39, 75. It also alleges that Defendants made statements about devoting resources to Metacard and treating it as a stock or IPO. ¶¶ 36-37.

The AC concedes that Defendants delivered on their promises. They provided exclusive access to events, including performances by high-profile artists such as Snoop Dogg. ¶¶ 52, 55, 77. They delivered substantial discounts on branded products. ¶¶ 60, 77. They granted access to private forums. ¶ 63, 65. And they conducted raffles and promotional giveaways—awarding $100,000 to one Metacard holder and more to others. ¶¶ 62, 78.

After the launch, Defendants discussed the Metacard program on social media and in private channels. ¶¶ 51, 53-54, 58-59, 63-65, 76, 88, 90-97. They expressed enthusiasm about the Metacard program and aspirations for future projects. *Id.* But the AC does not allege that Defendants sold any additional Metacards after the January 19, 2022 launch.

## C.    The Rescission Offer

In April 2024, in the wake of the broader NFT market collapse,[3] Defendants announced a new opportunity for Metacard holders, which became available on May

---

[2] NFTs—or "non-fungible tokens"—are digital assets that can be bought and sold online. ¶ 6; *see generally Yuga Labs v. Ripps*, 2023 WL 3316748, at *5 (C.D. Cal. Apr. 21, 2023) (recognizing that NFTs have "documented commercial value" and are often "sold specifically for their connection to a particular brand, creator, or associated creative work").

[3] Phil Rosen, *Remember when NFTs sold for millions of dollars? 95% of the digital collectibles may now be worthless*, Business Insider (Sept. 20, 2023), https://markets.businessinsider.com/news/currencies/nft-market-crypto-digital-assets-investors-messari-mainnet-currency-tokens-2023-9.

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

-2-

MEM. OF POINTS & AUTHORITIES ISO
DEFENDANTS' MTD FIRST AM. COMPL.
8:25-CV-161-FWS-DFM

20, 2024. *See* ¶¶ 91-94, 100-101; Declaration of Rona S. Li ("Li Decl."), Exs. 2-4. Defendants invited all Metacard holders (including Plaintiffs) to participate in a new product initiative or, if they preferred, to receive a full refund of their Metacard purchase price plus interest by entering into a Token Rescission Agreement (the "Agreement"). *Id.* The offer was widely publicized—across social media, the Metacard Discord channel, and Defendants' website—and remained open for 30 days. *Id.*

### D.    This Lawsuit

On January 29, 2025, Plaintiff Trenton Smith filed this putative class action, asserting claims for fraud, violations of the California Consumers Legal Remedies Act ("CLRA"), and breach of fiduciary duty. ECF No. 1. Defendants moved to dismiss. ECF No. 51. Rather than oppose the motion, on May 21, 2025, Plaintiff filed the AC. ECF No. 57. The AC asserts claims for fraud, violations of the CLRA, breach of fiduciary duty, breach of contract, and civil conspiracy. *Id.* The AC alleges that Defendants lied about the Metacard program the day before the January 19, 2022 sales. ¶¶ 26-40. It also alleges that, after the sales, "Defendants' continuing misrepresentations were made, in part, to delay and [*sic*] discovery by Plaintiff or other class members." ¶ 120. The AC further alleges that Smith was not aware of the rescission offer until the 30-day offer period had passed, and that new Plaintiff Michael Burrow signed the Agreement and returned his Metacard but did not receive a refund. ¶¶ 122, 131-132.

### E.    The Duplicative State Court Lawsuit

One week after filing the AC—and in a transparent attempt to harass Defendants and hedge their bets against this Court—Plaintiffs' counsel filed a nearly identical complaint in California state court. *See Husary v. Shahidi*, No. 30-2025-01487294-CU-BT-CXC (Cal. Super. Ct. June 2, 2025) (the "State Complaint"); Li Decl., Ex. 1. The State Complaint copy-and-pastes the same allegations, on behalf of the same putative class, against the same Defendants, for the same alleged

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

-3-

MEM. OF POINTS & AUTHORITIES ISO
DEFENDANTS' MTD FIRST AM. COMPL.
8:25-CV-161-FWS-DFM

misconduct. The only difference is a claim under California's Unfair Competition Law—and even *that* is premised on alleged fraud and CLRA violations asserted here. Defendants will seek appropriate relief in state court and reserve all rights.

## III.   LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts need not accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 1008 (9th Cir. 2018).

Because Plaintiffs' claims sound in fraud, they must also meet Rule 9(b)'s heightened pleading standard, which requires Plaintiff to plead "the circumstances constituting fraud" with particularity. Fed. R. Civ. P. 9(b); *see, e.g.*, *Sollberger v. Wachovia Sec., LLC*, 2010 WL 2674456, at *7 (C.D. Cal. June 30, 2010) (applying Rule 9(b) to fiduciary duty claim sounding in fraud); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (applying Rule 9(b) to CLRA claims sounding in fraud). That means specifying "the who, what, when, where, and how" of the alleged fraud. *Kearns*, 567 F.3d at 1124; *see Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (requiring "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations"); *Golden W. Wings LLC v. ShiftPixy*, 2023 WL 6787815, at *3 (C.D. Cal. Sept. 11, 2023) (Slaughter, J.) ("Rule 9(b) does not allow a complaint to lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant."). It also requires "set[ting] forth what is false or misleading about a statement, and why." *Beyer v. Symantec Corp.*, 333 F. Supp. 3d 966, 975 (N.D. Cal. 2018).

Cooley LLP
Attorneys at Law
Los Angeles (Downtown)

-4-

Mem. of Points & Authorities ISO
Defendants' MTD First Am. Compl.
8:25-cv-161-FWS-DFM

**Elements of Fraud.** Fraud claims require: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Coast Surgery Ctr. v. United Healthcare Ins.*, 2024 WL 650174, at *8 (C.D. Cal. Jan. 5, 2024) (Slaughter, J.). "The alleged misrepresentation must ordinarily be an affirmation of past or existing facts to be an actionable fraud claim; predictions as to future events are deemed opinions, and not actionable by fraud." *Glen Holly Ent. v. Tektronix*, 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999). Where, as here, the theory is promissory fraud, the complaint must allege "why the promise was false when made," which "requires pleading facts from which it can be inferred that the promisor had no intention of performing at the time the promise was made." *UMG Recordings v. Glob. Eagle Ent.*, 117 F. Supp. 3d 1092, 1108 (C.D. Cal. 2015) ("Mere nonperformance of a promise does not suffice to show the falsity of the promise."). *Id.* Reliance requires allegations that the plaintiff "actually relied on the defendant's misrepresentations," and that he was "reasonable in doing so." *OCM Principal Opportunities Fund, L.P. v. CIBC World Mkts. Corp.*, 68 Cal. Rptr. 3d 828, 855 (Cal. Ct. App. 2007).

An action for fraud must be based on a statement of past or existing facts, not a statement regarding future events. *See S.F. Design Ctr. Assocs. v. Portman Cos.*, 50 Cal. Rptr. 2d 716, 724 (Cal Ct. App. 1995) ("It is hornbook law that an actionable misrepresentation must be made about past or existing facts; statements regarding future events are merely deemed opinions."); *Indigo Grp. USA v. Polo Ralph Lauren Corp.*, 2011 WL 13128301, at *3 (C.D. Cal. Oct. 25, 2011) (predictions as to future events are opinions, not actionable fraud). Additionally, while a quantifiable statement about the "specific or absolute characteristics of a product," may be an actionable statement of fact, a "general, subjective claim about a product is non-actionable puffery." *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008); *see also Glen Holly Ent. v. Tektronix*, 352 F.3d 367, 379 (9th Cir. 2003)

(generalized, vague and unspecific assertions constitute puffery upon which a reasonable consumer could not rely). Exceptions to the general rule that a misrepresentation is inactionable unless it is based on an existing fact arise (1) where a party holds himself or herself out to be specially qualified and the other party is so situated that he or she may reasonably rely upon the former's superior knowledge, (2) where the opinion is by a fiduciary or other trusted person, (3) where a party states his or her opinion as an existing fact or as implying facts which justify a belief in the truth of the opinion. *Brakke v. Econ. Concepts, Inc.*, 153 Cal. Rptr. 3d 1, 6 (Cal. Ct. App. 2013).

**Elements of Breach of Fiduciary Duty.** Fiduciary duty claims require (1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) damage proximately caused by the breach. *See Guo v. Robl*, 2023 WL 2683473, at *5 (C.D. Cal. Mar. 2, 2023) (Slaughter, J.). "A fiduciary relationship is created where a person reposes trust and confidence in another and the person in whom such confidence is reposed obtains control over the other person's affairs." *Id.* "Before a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." *Id.* "The breach of fiduciary duty can be based upon either negligence or fraud depending on the circumstances." *Ash v. N. Am. Title Co.*, 168 Cal. Rptr. 3d 499, 513 (Cal. Ct. App. 2014).

**Elements of California Consumers Legal Remedies Act.** CLRA claims require (1) a misrepresentation, (2) the defendant's knowledge of it, (3) the plaintiff's reliance, and (4) resulting damages. *See Bergeron v. Monex Deposit Co.*, 2020 WL 3655495, at *3 (C.D. Cal. Apr. 29, 2020); *Coleman-Anacleto v. Samsung Elecs. Am.*, 2017 WL 86033, at *7 (N.D. Cal. Jan. 10, 2017) ("A plaintiff must sufficiently allege a defendant's knowledge at the time of sale in order to state a CLRA claim under an affirmative misrepresentation theory just as a plaintiff must do so in order to state a CLRA claim under a fraudulent omission theory.").

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

-6-

MEM. OF POINTS & AUTHORITIES ISO
DEFENDANTS' MTD FIRST AM. COMPL.
8:25-CV-161-FWS-DFM

**Elements of Breach of Contract.** Breach of contract claims require "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Soper v. United Airlines*, 2024 WL 3305770, at *4 (C.D. Cal. Apr. 19, 2024) (Slaughter, J.). "A written contract may be pleaded either by its terms—set out verbatim in the complaint or a copy of the contract attached to the complaint and incorporated therein by reference—or by its legal effect." *Id.* "[T]o plead a contract by its legal effect, plaintiff must allege the substance of its relevant terms, which requires a careful analysis of the instrument, comprehensiveness in statement, and avoidance of legal conclusions." *Id.* "Likewise, to plead breach, the plaintiff must identify with specificity the contractual obligations that were allegedly breached." *Grapevine Educ., LLC v. Educ. Ventures, LLC*, 2023 WL 5167242, at *5 (S.D. Cal. Feb. 17, 2023).

**Elements of Civil Conspiracy.** Civil conspiracy claims require "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *ARF Dashnaktsutyun, W. U.S.A. v. Armenian Revolutionary Fed'n WUSA*, 2023 WL 4155366, at *11 (C.D. Cal. May 26, 2023) (Slaughter, J.) (quoting *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1581 (1995)). Under California law, "there is no separate and distinct tort cause of action for civil conspiracy." *Liberty City Movie, LLC v. U.S. Bank, N.A.*, 824 F. App'x 505, 508 (9th Cir. 2020). "In other words, a civil conspiracy does not give rise to a cause of action unless an independent civil wrong has been committed." *Id.* Additionally, the conspiring defendants must have "actual knowledge that a tort is planned and concur in the scheme with knowledge of its unlawful purpose." *Kidron*, 40 Cal. App. 4th at 1582. A civil conspiracy claim must be pleaded with particularity under Rule 9(b)'s heightened pleading standard where the claim sounds in fraud. *Wasco Prods. v. Southwall Techs.*, 435 F.3d 989, 990-91 (9th Cir. 2006).

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

-7-

MEM. OF POINTS & AUTHORITIES ISO
DEFENDANTS' MTD FIRST AM. COMPL.
8:25-CV-161-FWS-DFM

## IV.    ARGUMENT

Plaintiffs' misrepresentation claims—fraud, CLRA, breach of fiduciary duty, and conspiracy—rise and fall on what was said before they bought their Metacards. But the AC identifies no pre-sale statement that was false when made, and pleads no facts showing fraudulent intent or reliance. That is dispositive. Everything else— post-sale commentary, vague marketing, and buyer's remorse—is legally irrelevant.

The contract claim fails for a different reason: Plaintiffs do not allege the contract terms they contend were breached. And the conspiracy claim fails without an underlying tort.

### A.    The AC Fails To State A Claim As To Any Pre-Sale Statement

Plaintiffs' claims require a false statement—one that was untrue when made. *Supra* Part III (collecting cases). The AC alleges none. The AC alleges (i) pre-sale statements made before Plaintiffs bought their Metacards on January 19, 2022, *e.g.*, ¶¶ 26-40, and (ii) post-sale statements made after their purchases, *e.g.*, ¶¶ 51, 53-54, 58-59, 63-65, 76, 88, 90-97. But Plaintiffs do not base a claim on the post-sale statements, as none could have induced Plaintiffs' purchases—and all are inactionable in any event. *Infra* Part IV.B. As for the pre-sale statements, the AC does not identify any that were false when made, allege facts showing scienter or negligence, or plead reasonable reliance on any supposed pre-sale misstatement. Each defect is independently fatal.

#### 1.    The AC Fails To Allege That Any Pre-Sale Statement Was False Or Misleading

Plaintiffs challenge pre-sale statements about future benefits—such as exclusive access to projects and events, membership perks, branded merchandise, and giveaways. ¶¶ 32-35, 38-39, 75. But the AC concedes that those benefits were delivered. It admits Metacard holders received access to exclusive events, ¶ 52 (concert), ¶ 55 (private watch parties), ¶ 77 (events); a virtual forum, ¶¶ 63, 65; merchandise discounts, ¶¶ 60, 77; and giveaways, ¶¶ 62, 78 (giveaways of

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

-8-

MEM. OF POINTS & AUTHORITIES ISO
DEFENDANTS' MTD FIRST AM. COMPL.
8:25-CV-161-FWS-DFM

"expensive products" or "cash prizes"). It also acknowledges that Defendants launched a business venture for Metacard holders. ¶¶ 91-97. Plaintiffs may wish more had been delivered. But they cannot identify any meaningful daylight between what was promised and what was delivered, dooming their claims. *See Coast Surgery*, 2024 WL 650174, at *9 (dismissing where complaint failed to specify "the difference between what Plaintiff believes the UCR rate should have been for each procedure and what Defendants actually paid").

Plaintiffs try to overcome those admissions by alleging that they expected more than "a few limited events" and believed Defendants would continue offering benefits. ¶ 56. But the AC itself contradicts that narrative: It acknowledges that Defendants delivered multiple events and perks over the first two years. And in any case, the AC does not allege that Defendants promised to deliver specific benefits within a specific time period. The AC lists perks Defendants delivered within the first two years. ¶¶ 52, 55, 60, 62-63, 65, 77-78. But Defendants never set a deadline for when all anticipated benefits would arrive. To the contrary, the AC admits that Defendants described the Metacard project as "a long term play," intended to run "for years and years and years," and the start of "a long journey." ¶¶ 30b, 36a, 38. Plaintiffs are not so much pleading fraud as impatience.

To make matters worse, the AC alleges no facts suggesting that—at the time of the pre-sale statements—Defendants did not intend to provide all promised benefits. That is fatal to these claims. *See Miron v. Herbalife Int'l*, 11 F. App'x 927, 930 (9th Cir. 2001) ("[T]o state a viable claim for misrepresentation, a plaintiff must show that the defendant did not intend to perform the promises at the time they were made"); *UMG Recordings*, 117 F. Supp. 3d at 1108 ("Mere nonperformance of a promise does not suffice to show the falsity of the promise."); *see also Brakke*, 153 Cal. Rptr. 3d at 6 ("[T]o be actionable, a misrepresentation must be of an existing

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

-9-

MEM. OF POINTS & AUTHORITIES ISO
DEFENDANTS' MTD FIRST AM. COMPL.
8:25-CV-161-FWS-DFM

fact, not an opinion or prediction of future events.").[4]

Plaintiffs also challenge pre-sale statements that Defendants were dedicating resources to the Metacard project. ¶ 36.[5] But the AC never explains how those statements were false. It alleges—in conclusory fashion and "[u]pon information and belief—that "Defendants failed to devote any effort toward fulfilling the promises of Metacard ownership." ¶ 70. Yet Plaintiffs offer no basis for that belief, and the allegation is contradicted by the AC's own admissions. *See* ¶¶ 52, 55, 60, 62-63, 65, 77-78, 91-97. As a matter of law, conclusory allegations made on information and belief can neither survive Rule 9(b) nor override specific facts pleaded elsewhere. *BMA LLC v. HDR Glob. Trading Ltd.*, 2021 WL 949371, at *6, *9 (N.D. Cal. Mar. 12, 2021) (dismissing claims made on information and belief because "[a]bsent additional facts rendering plaintiff's beliefs plausible, the allegations fail under Rule 8, let alone under Rule 9(b)"); *Becton, Dickinson & Co. v. Cytek Biosciences*, 2020 WL 1877707, at *4 n.10 (N.D. Cal. Apr. 15, 2020) (same).

Many challenged pre-sale statements about future benefits and allocated resources are also inactionable puffery or opinions. The AC points to vague, forward-looking remarks such as (i) "I think what [the Metacard] gives you access to," (ii) "We'll be doing a lot of collabs in the space with cool projects," (iii) "This is something special we're building, I believe. And I feel like buyers right now are getting in early," (iv) "you guys are helping us build something and you're also hopefully getting a more valuable token," and (v) "The Full Send *goal* is to launch

---

[4] At most, Plaintiffs allege that Defendants began to "abandon the promise of ongoing perks such as attendance at events and access to merchandise," in March 2022. ¶ 57. But this allegedly occurred two months *after* Plaintiffs purchased their Metacards. Not only are those post-sale statements irrelevant to Plaintiffs' fraud claims, *see* Section IV.B *infra*, but they are also contradicted by Plaintiffs' allegations about events and other benefits delivered after March 2022. *E.g.* ¶ 52 (Snoop Dogg concert in April 2022).

[5] Plaintiffs additionally challenge pre-sale statements representing that Metacard was about utilities and not art and "suggest[ing] that the Metacard would function like stock or an initial public offering." ¶¶ 30, 37. But the AC does not offer a single reason why those statements were false.

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

-10-

MEM. OF POINTS & AUTHORITIES ISO
DEFENDANTS' MTD FIRST AM. COMPL.
8:25-CV-161-FWS-DFM

more Full Send branded ventures." ¶¶ 32-34, 38. These are textbook examples of inactionable puffery and opinion—not concrete misrepresentations. *See In re Am. Apparel S'holder Litig.*, 855 F. Supp. 2d 1043, 1072 (C.D. Cal. 2012) (words such as "pursuing," "looking to build," "going to be," and "committed to" are goals, not facts); *Indigo Grp.*, 2011 WL 13128301, at *3 (dismissing fraud claim with prejudice "because statements of future intent are not actionable fraud"); *Glen Holly Ent.*, 352 F.3d at 379 (affirming dismissal where "statements were generalized, vague and unspecific assertions, constituting mere 'puffery' upon which a reasonable consumer could not rely"); *In re Syntex Corp. Sec. Litig.*, 855 F. Supp. 1086, 1095 (N.D. Cal. 1994) (statements that "we're doing well and I think we have a great future" were inactionable puffery).

### 2.    The AC Fails To Allege That Any Defendant Acted With Scienter Or Negligence

Plaintiffs' claims require fraudulent intent, knowledge, and/or negligence. *Supra* Part III (collecting cases). The AC alleges none of it.

Plaintiffs assert that "[p]roof of Defendants' scienter comes" from podcasts, which allegedly show "that Metacard was a fraudulent scheme since its inception," and that Metacards were "patently worthless." ¶ 86. But they identify no statement in any podcast contradicting a pre-sale representation, let alone one showing contemporaneous knowledge of falsity. And the AC's assertion that "Defendants knew at all times that they did not have any plans or otherwise intend to pursue the promised benefits of the Metacard in good faith," ¶ 42, is pure *ipse dixit*.

The AC's allegations simply do not suffice. "Although intent can be averred generally under Rule 9(b), a plaintiff must point to facts which show that defendant harbored an intention not to be bound by terms of the contract at formation." *UMG Recordings*, 117 F. Supp. 3d at 1109-10; *see IDS v. AMResorts, LP*, 2024 WL 4228238, at *16 (C.D. Cal. July 9, 2024) (Rule 9(b) requires "facts from which an inference of scienter could be drawn."). The AC points to none. *See id.* at *17 ("[The

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

-11-

MEM. OF POINTS & AUTHORITIES ISO
DEFENDANTS' MTD FIRST AM. COMPL.
8:25-CV-161-FWS-DFM

FAC] does not allege that Fernandez and Torres made inconsistent contemporaneous statements, or that they later conceded that when they made those statements they knew that the statements were false. Instead, the FAC only alleges that these individuals 'had no intention of honoring' their promises at the time of making them. This conclusory allegation does not meet Plaintiffs' burden under Rule 9(b) of setting forth facts from which an inference of scienter could be drawn.").

Lest we forget, the AC openly admits that Defendants provided numerous benefits to Metacard holders. Section IV.A.1, *supra*. That forecloses any claim of fraudulent intent or negligence. *See Tsai v. Wang*, 2017 WL 2587929, at *6 (N.D. Cal. June 14, 2017) ("[T]he allegations in the complaint fail to give rise to a plausible inference that Defendant did not intend to honor his promises to deliver wines to Plaintiff at the time he made them.").

### 3. The AC Fails To Allege That Plaintiff Relied On Any Pre-Sale Statement

Plaintiffs' claims also require reliance—that Plaintiffs actually and justifiably relied upon a specific misrepresentation in deciding to buy. *Supra* Part III (collecting cases). But the AC offers nothing but conclusory allegations of reliance.

It vaguely alleges that Plaintiffs "listened to Defendants' podcast episode and watched Defendants' livestream," and that they relied on generic "statements regarding the benefits of owning a Metacard." ¶¶ 117-118, 125-126. But the AC never identifies which specific statements Plaintiffs relied on or when they heard or saw them. That alone defeats their claim. *See Kearns*, 567 F.3d at 1126-27 (affirming dismissal where plaintiff "failed to specify which sales material he relied upon in making his decision to buy a CPO vehicle"); *Hernandez v. Nissan N. Am.*, 2023 WL 3806377, at *4 (C.D. Cal. Mar. 29, 2023) (dismissing where complaint "fails to identify when Plaintiffs viewed the marketing materials"); *Lolicel (Pty) Ltd. v. Stanmar Int'l [USA]*, 2023 WL 3134599, at *8 (S.D. Cal. Apr. 27, 2023) (dismissing where "Plaintiff has not particularly identified which misrepresentations upon which

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

-12-

MEM. OF POINTS & AUTHORITIES ISO
DEFENDANTS' MTD FIRST AM. COMPL.
8:25-CV-161-FWS-DFM

it was justified in relying on").

## B. The AC Does Not Base A Claim On Any Post-Sale Statement

Plaintiffs' misrepresentation claims necessarily rest on statements made before they bought their Metacards on January 19, 2022, thereby inducing their purchases. *E.g.*, ¶¶ 30, 116. To be sure, there is plenty of rhetoric about post-sale statements in the AC. *E.g.*, ¶¶ 51, 53-54, 58-59, 63-65, 76, 88, 90-97. But post-sale statements could not have induced Plaintiffs' earlier purchases, and they never contend otherwise.

On its face, the AC's misrepresentation claims are based on Plaintiffs' Metacard purchases on January 19, 2022. *E.g.*, ¶ 151 ("As a result of Defendants' wrongful acts in concealing and misrepresenting these facts, Plaintiffs purchased Metacards . . . ."); ¶ 156 ("As a result, Plaintiff and Class Members relied on those false representations (they are identified above) and purchased the Metacards . . . ."); ¶ 177 ("Had Plaintiffs and the Class Members known of the properties of the Metacards, they would not have proceeded with purchasing . . . ."). Nowhere does it allege that any post-sale statement played a role in Plaintiffs' earlier purchase decisions. It appears these post-sale allegations were included in an effort to plead around the applicable statutes of limitations. ¶ 120 ("Defendants' continuing misrepresentations were made, in part, to delay and [*sic*] discovery by Plaintiff or other class members.").

Because Plaintiffs' misrepresentation claims rise and fall on the pre-sale statements, the Court need not analyze the post-sale statements. But for the record, no post-sale statement is actionable. All were vague expressions of optimism, predictions, or opinions—not concrete misrepresentations of fact. Many were classic puffery. *See Glen Holly Ent.*, 352 F.3d at 379 (affirming dismissal where "statements were generalized, vague and unspecific assertions, constituting mere 'puffery' upon which a reasonable consumer could not rely"). Others concerned future plans, which are not actionable unless Defendants knew at the time they would never follow

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

-13-

MEM. OF POINTS & AUTHORITIES ISO
DEFENDANTS' MTD FIRST AM. COMPL.
8:25-CV-161-FWS-DFM

through. *See In re Am. Apparel S'holder Litig.*, 855 F. Supp. 2d at 1072 (words such as "pursuing," "looking to build," "going to be," and "committed to" are goals, not facts); *Indigo Grp.*, 2011 WL 13128301, at *3 (dismissing fraud claim with prejudice "because statements of future intent are not actionable fraud"). Some are not even attributed to Defendants but to others like "Judd." ¶ 63. None was false or misleading. And in any event, Plaintiffs do not allege that they ever saw a post-sale statement about the Metacard program.

### C.   The AC Fails To Allege A Fiduciary Relationship

Plaintiffs' fiduciary duty claim fails for an independent reason: Defendants owed no fiduciary duty. Fiduciary duties arise only where one party "knowingly undertake[s] to act on behalf and for the benefit of another" or "enter[s] into a relationship which imposes that undertaking as a matter of law." *City of Hope Nat'l Med. Ctr. v. Genentech*, 181 P.3d 142, 150 (Cal. 2008). None of that is alleged here.

"California law is clear that an arm's length commercial transaction does not give rise to a fiduciary relationship." *Kamath v. Itria Ventures, LLC*, 2024 WL 590603, at *6 (N.D. Cal. Feb. 13, 2024); *see McCann v. Lucky Money*, 29 Cal. Rptr. 3d 437, 449 (Cal. Ct. App. 2005) ("Generally, there is no fiduciary owed duty in a purely commercial situation."); *see id.* (no fiduciary duty where "the nature of the relationship between the customer and the telegram company was in the nature of an arms-length transaction in which plaintiff bargained for defendant's promise to transmit a certain sum of money"). Plaintiffs bought Defendants' product at arms' length. That is ordinary commerce, not a fiduciary relationship.

Plaintiffs try to evade this black-letter rule by labeling Defendants their "agent." ¶ 149. But an agency relationship requires "mutual consent, and control by the principal of the agent." *Luken v. Christensen Grp.*, 247 F. Supp. 3d 1158, 1163 (W.D. Wash. 2017). The AC alleges neither. *See id.* at 1163-64 (dismissing where plaintiff "[had] not suggested, much less pled, that the parties agreed that [defendant] or its officers agreed to be [plaintiff's] agent, or that [plaintiff] agreed to be their

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

-14-

MEM. OF POINTS & AUTHORITIES ISO
DEFENDANTS' MTD FIRST AM. COMPL.
8:25-CV-161-FWS-DFM

principal," and did not "plausibly allege that [plaintiff] had the requisite control over the defendants to make them his agent"). Accepting Plaintiffs' theory would turn every commercial transaction into a fiduciary relationship, which is not the law.[6]

### D.    The AC's CLRA Claim Fails Because Plaintiffs Are Not Entitled To Equitable Relief

Plaintiffs' CLRA claim fails for the independent reason that they are not entitled to the equitable relief they seek. *See* ¶ 180 (seeking an injunction, restitution, and disgorgement under the CLRA).[7]

To obtain equitable relief, Plaintiffs must show that legal remedies are inadequate. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 843-44 (9th Cir. 2020). But they do not even attempt to do so. "Monetary damages are generally an adequate remedy for past harm, especially where the legal and equitable claims asserted are duplicative." *In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*, 689 F. Supp. 3d 760, 777 (C.D. Cal. 2023). Here, Plaintiffs seek the same monetary damages—on the same basis and in the same amount—as in their request for equitable relief. ¶¶ 178-80; *see Sonner*, 971 F.3d at 844 ("Sonner fails to explain how the same amount of money for the exact same harm is inadequate or incomplete . . . ."). That precludes their request for equitable relief.

Plaintiffs' request for injunctive relief is doubly misguided because they lack standing to make it. "To establish Article III standing to obtain an injunction, Plaintiffs must prove that they face a threat of future injury that is actual and imminent." *Ford Motor*, 689 F. Supp. 3d at 777. That is not present here, as Plaintiffs

---

[6] The AC also alleges that Defendants had specialized knowledge with respect to Metacard, ¶ 45, but to the extent Plaintiffs suggest that such knowledge gives rise to a fiduciary duty, they are mistaken. Specialized knowledge does not create a fiduciary duty where one did not otherwise exist. *See Signal Hill Serv. v. Macquarie Bank Ltd.*, 2013 WL 12244056, at *19 (C.D. Cal. June 12, 2013) (finding no fiduciary duty even where one party had superior knowledge because a mere difference in power and access to information does not establish a fiduciary relationship).

[7] While the AC also cites CLRA Section 1770(a)(19) concerning "unconscionable provisions," ¶ 178(g), it never identifies the provision at issue or explains why it is unconscionable.

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

-15-

MEM. OF POINTS & AUTHORITIES ISO
DEFENDANTS' MTD FIRST AM. COMPL.
8:25-CV-161-FWS-DFM

do not allege plans "to purchase [another Metacard] in the future." *In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig. (No. II)*, 2021 WL 3878654, at *2 (9th Cir. Aug. 31, 2021). "Without any stated desire to purchase [one] in the future, [plaintiffs] do not have standing to pursue injunctive relief." *Id.*

### E.    The AC Fails To Allege Breach Of Contract

The contract claim fails at the threshold. Plaintiffs do not allege the existence of an enforceable contract, much less identify the terms Defendants supposedly breached. Plaintiffs assert that Burrow entered into an agreement on June 17, 2024, under which he "would receive $2,300, in exchange for returning his Metacard tokens." ¶¶ 130-31, 185. But the AC says nothing about when or how the contract was formed, when Forgeard signed it, whether Burrow communicated his acceptance, or returned Burrow returned his Metacard.[8]

Nor do Plaintiffs attach the agreement or plead its terms. They do not allege the contract's language or plead it by legal effect—which requires a "comprehensive[]" account of its material terms. *Soper*, 2024 WL 3305770, at *4. They do not say how or when the refund was to be paid, in what form, or under what conditions. They do not identify any provision that was allegedly breached. And while the AC declares that Burrow satisfied his obligations, it never specifies what those obligations were, beyond noting that they included returning his Metacard— but without explaining how, when, or to whom Burrow was required to return it. ¶ 132. That is simply not enough to plead breach of contract. *See Grapevine Educ., LLC*, 2023 WL 5167242, at *5 (dismissing breach of contract claim because the complaint "fail[ed] to allege with any degree of specificity…the services [the party seeking relief] was obligated to perform, or the timing, amount, and form of payment

---

[8] On July 2, 2025, Defendants' counsel informed Plaintiffs' counsel that Burrow never returned his Metacard to qualify for a refund, and therefore that the AC's breach-of-contract allegations are demonstrably false. Li Decl. ¶ 2. Although Plaintiffs' counsel promised to investigate the matter with Burrow and revert, Defendants' counsel have heard nothing since. *Id.* Defendants reserve all rights.

Cooley LLP
Attorneys at Law
Los Angeles (Downtown)

-16-

MEM. OF POINTS & AUTHORITIES ISO
DEFENDANTS' MTD FIRST AM. COMPL.
8:25-CV-161-FWS-DFM

required of [the allegedly breaching party]"); *Kaui Scuba Ctr. v. Padi Ams.*, 2011 WL 13227827, at *2 (C.D. Cal. Mar. 10, 2011) (dismissing breach of contract claim because "[o]n the face of the [complaint], Plaintiff does not: (1) provide a copy of the contract establishing the contractual terms; (2) lay out the specific terms within the complaint itself; or (3) allege the substance of the contract's relevant terms.").

At most, Plaintiffs offer a vague summary of what they think the agreement required. But "summaries of the provisions that Plaintiff alleges Defendant has breached, without providing sufficient detail as to their other terms and boundaries," do not suffice. *Zo Skin Health v. ForeverYoung Laser Ctr., Weight Mgmt. & Med. Spa, LLC*, 2022 WL 18397631, at *7 (C.D. Cal. Dec. 7, 2022) (Slaughter, J.).

### F.    The AC's Civil Conspiracy Claim Fails Because Plaintiffs Do Not Allege An Underlying Tort or Basic Details About the Conspiracy

Plaintiffs' civil conspiracy claim fails for two independent reasons.

*First*, there is no conspiracy without an underlying tort. *See Lobstein v. Wash. Mut. Mortg. Pass-Through Certificates WMALT Series 2007-OC1*, 2020 WL 5913897, at *5 (C.D. Cal. Aug. 27, 2020) ("Under California law, there is no separate tort of civil conspiracy and no action for conspiracy to commit a tort unless the underlying tort is committed and damage results therefrom."), *aff'd*, 2021 WL 5405488 (9th Cir. Nov. 18, 2021). Because the AC fails to plead any underlying tort, the conspiracy claim fails as a matter of law. *See Liberty City Movie*, 824 F. App'x at 508 (affirming dismissal where no underlying tort supported conspiracy claim).

*Second*, the AC does not allege the basic elements of a conspiracy. It vaguely asserts that Defendants "agreed and conspired to solicit Plaintiffs," ¶ 193, and "acted jointly, in concert, or in a conspiracy," ¶ 195. But it offers no facts about when or where the conspiracy was formed, who proposed or joined it, or how it was carried out. That comes nowhere close to alleging a conspiracy. *See ARF Dashnaktsutyun*, 2023 WL 4155366, at *11-12 (Slaughter, J.) (finding that plaintiffs had not adequately pled civil conspiracy under any pleading standard when the plaintiff did

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

-17-

MEM. OF POINTS & AUTHORITIES ISO
DEFENDANTS' MTD FIRST AM. COMPL.
8:25-CV-161-FWS-DFM

not demonstrate where or when the purported conspiracy took place, which representatives conceived of, entered into, or carried out the conspiracy, or what conduct related to the conspiracy); *Murphy v. Am. Gen. Life Ins. Co.*, 74 F. Supp. 3d 1267, 1288 (C.D. Cal. 2015) (dismissing civil conspiracy claims where plaintiff included only conclusory allegations which lacked detail about when or where a conspiracy was conceived, or who entered into or carried out the conspiracy).

### G. Plaintiffs' Claims Are Barred By Defendants' Rescission Offer

Even if Plaintiffs had stated a misrepresentation claim based on their Metacard purchases—and they have not—they had the chance to be made whole. Last year, Defendants offered every Metacard purchaser a full refund of their purchase price plus interest. That forecloses Plaintiffs' fraud, CLRA, breach of fiduciary duty, and civil conspiracy claims.

Courts hold that a party who has been offered a full refund has no justiciable misrepresentation claim. *See, e.g.*, *Harris v. PFI W. Stores*, 2020 WL 3965022, at *3 (C.D. Cal. Apr. 9, 2020) (no standing where plaintiff "would have been fully compensated by the refund offer she received from [defendant] . . . prior to the commencement of this case"); *Vavak v. Abbott Lab'ys*, 2011 WL 10550065, at *3 (C.D. Cal. June 17, 2011) (claims moot where plaintiff rejected refund offer); *Tosh-Surryhne v. Abbott Lab'ys*, 2011 WL 4500880, at *3 (E.D. Cal. Sept. 27, 2011) ("When a defendant offers to make plaintiffs whole, that tender ends any dispute over restitution."); *see also Ford Motor*, 689 F. Supp. 3d at 776-77 (plaintiff could not seek damages under the CLRA where he declined defendant's refund offer).

That is exactly what happened here. Defendants publicized a refund offer across social media, the Metacard Discord channel, and their website—and kept it open for 30 days. *See* Li Decl., Exs. 2-4; ¶¶ 91-94. Plaintiffs were eligible for a full refund plus interest and cannot now seek relief for their Metacard purchase. *See Harris*, 2020 WL 3965022, at *3. And for the reasons explained above, *see* Part IV.E, they cannot rely on Burrow's claim that Defendants breached that contract because

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

-18-

MEM. OF POINTS & AUTHORITIES ISO
DEFENDANTS' MTD FIRST AM. COMPL.
8:25-CV-161-FWS-DFM

1  he does not adequately allege that claim.

2  **V.    CONCLUSION**

3      For the foregoing reasons, the AC should be dismissed with prejudice.

4

5

6  Dated: July 10, 2025                    Respectfully submitted,

7                                          COOLEY LLP

8                                          */s/ William K. Pao*
                                           WILLIAM K. PAO (252637)
9                                          (wpao@cooley.com)
                                           ARIANA BUSTOS (345918)
10                                         (abustos@cooley.com)
                                           355 S. Grand Avenue, Suite 900
11                                         Los Angeles, CA 90071-1560
                                           Telephone:  (213) 561-3250
12                                         Facsimile:   (213) 561-3244

13                                         BRIAN M. FRENCH (*pro hac vice*)
                                           (bfrench@cooley.com)
14                                         RONA S. LI (*pro hac vice*)
                                           (rproper@cooley.com)
15                                         KATHERINE BECHTEL (*pro hac vice*)
                                           (kbechtel@cooley.com)
16                                         55 Hudson Yards
                                           New York, NY 10001-2157
17                                         Telephone: (212) 479-6000
                                           Facsimile: (212) 479-6275

18

19                                         LUKE C. CADIGAN (*pro hac vice*)
                                           (lcadigan@cooley.com)
20                                         500 Boylston Street, 14th Floor
                                           Boston, MA 02116-3736
21                                         Telephone: (617) 937-2300
                                           Facsimile: (617) 937-2400

22

23                                         *Attorneys for Defendants John Shahidi, Nelk,
                                           Inc., Metacard, LLC, Nelk USA, Inc., and
                                           Kyle Forgeard*

24

25

26

27

28

## ***L.R. 11-6.2 CERTIFICATE OF COMPLIANCE***

The undersigned, counsel of record for Defendants, certifies that this brief contains 6,217 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 10, 2025

COOLEY LLP

*/s/ William K. Pao*
WILLIAM K. PAO (252637)
(wpao@cooley.com)
355 S. Grand Avenue, Suite 900
Los Angeles, CA 90071-1560
Telephone:   (213) 561-3250
Facsimile:   (213) 561-3244

*Attorneys for Defendants John Shahidi, Nelk, Inc., Metacard, LLC, Nelk USA, Inc., and Kyle Forgeard*

321405064

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

-20-

MEM. OF POINTS & AUTHORITIES ISO
DEFENDANTS' MTD FIRST AM. COMPL.
8:25-CV-161-FWS-DFM