_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:25-cv-00161-FWS-DFM                      Date: November 17, 2025
Title: Trenton Smith v. John Shahidi *et al.*

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

| Rolls Royce Paschal | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**PROCEEDINGS: (IN CHAMBERS) ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT [89]**

      In this putative class action, Plaintiff Trenton Smith brings claims against Defendant Nelk, Inc. doing business as Nelk or Full Send, Defendant Nelk USA, Inc., Defendant Metacard LLC, Defendant Kyle Forgeard ("Kyle"), and Defendant John Shahidi ("John") (collectively, "Defendants") related to the purchase of Metacard. (*See generally* Dkt. 80 ("Second Amended Complaint" or "SAC").) Before the court is Defendants' Motion to Dismiss. (Dkt. 89 ("Motion" or "Mot.").) Plaintiff opposes the Motion. (Dkt. 92 ("Opp.").) Defendants filed a reply in support of the Motion. (Dkt. 93.) The court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."); C.D. Cal. L.R. 7-15 (authorizing courts to "dispense with oral argument on any motion except where an oral hearing is required by statute"). Accordingly, the hearing set for November 20, 2025, is **VACATED** and off calendar. Based on the state of the record, as applied to the applicable law, the Motion is **GRANTED IN PART AND DENIED IN PART**.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00161-FWS-DFM                                         Date: November 17, 2025
Title: Trenton Smith v. John Shahidi *et al.*

### I.      Summary of the Second Amended Complaint's Allegations[1]

Kyle and John are famous YouTube personalities known for their YouTube Channel "Nelk Boys" which gained a following of 8.22 million subscribers from its prank videos and podcasts. (SAC ¶ 2.) Following the success of their channel and podcast, Kyle and John developed a brand called "Full Send." (*Id.* ¶ 3.) The Full Send business venture at issue is Kyle and John's company Metacard, LLC. (*Id.* ¶ 4.) Metacard, LLC was created to sell digital assets that provide its holders access to business investment opportunities in ventures such as lounges, gyms, festivals, casinos, and restaurants, as well as access to products and services including apparel, virtual stores, virtual festivals, Metaverse casinos, and recording artists. (*Id.* ¶¶ 4, 45.) The digital assets were in the form of Full Send Metacard Non-Fungible Tokens ("Metacards"). (*Id.* ¶ 5.) Non-Fungible Tokens ("NFTs") are a form of digital assets that can be purchased, sold, and transferred on other cryptocurrencies, such as the OpenSea NFT marketplace. (*Id.* ¶ 6.) When a NFT project is launched, the creator can embed royalty provisions directly in the project's smart contract. (*Id.* ¶ 7.) A smart contract is the self-executing code that governs the rules of the NFT blockchain such as Ethereum. (*Id.*) "Ethereum is a decentralized, open-source blockchain platform that enables peer-to-peer transactions and the execution of self-enforcing 'smart contracts.'" (*Id.* ¶ 8.) "Its native cryptocurrency is called Ether (ETH)" which "is used to pay for transaction fees, power smart contract operations, and act as a medium of exchange and value within the Ethereum ecosystem." (*Id.*) "Through this code, the creator can specify that a fixed percentage of the sale price must be automatically routed back to the creator's wallet each time the NFT is resold on a secondary marketplace. When the NFT is transferred, marketplaces that honor these smart contract rules (such as OpenSea) automatically calculate the royalty and send the designated percentage of the transaction to the creator's account. In this way, creators continue to earn ongoing revenue from the treading activity of their NFTs, even after the initial mint has concluded." (*Id.* ¶ 9.)

On January 18, 2022, the day before the official release of Metacards, Kyle and John used their podcast to promote the sale of Metacards. (*Id.* ¶ 33.) On the same day, Defendants

---

[1] For purposes of the Motion, the court "accept[s] factual allegations in the [SAC] as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:25-cv-00161-FWS-DFM | Date: November 17, 2025 |
| Title: Trenton Smith v. John Shahidi *et al.* | |

held a livestream attended by more than 240,000 individuals and posted on Instagram to promote the sale of Metacards. (*Id.* ¶¶ 34-35.) Instead of being a piece of digital art or collector's item, Defendants represented that Metacard would provide specific benefits to purchasers. (*Id.* ¶ 38.) For example, Metacard purchasers would have exclusive access to Defendants' current and future business endeavors. (*Id.* ¶ 39.) In addition, Defendants would provide exclusive access to merchandise, Nelk Boys content, including behind-the-scenes videos, bonus footage, and unreleased material, and invitations or early access to virtual meetings, live streams, or digital meetups with the Nelk Boys. (*Id.* ¶¶ 40, 46.) Metacard holders would have access to the Full Send and Nelk Boys community, including exclusive forums and chat groups with the Nelk Boys and other NFT holders, and discounts on Full Send branded merchandise such as clothing and accessories. (*Id.* ¶ 46.)

On January 19, 2022, Defendants launched the Metacards, selling all 10,000 NFTs within 10 minutes and earning over $23 million. (*Id.* ¶ 53.) Metacards were sold in OpenSea and were purchased using either regular credit cards or Ethereum. (*Id.* ¶ 10.) Defendants embedded a ten percent (10%) royalty clause in the Metacard NFT smart contract. (*Id.* ¶ 11.) Metacard purchasers relied on the representations made by Defendants leading up to the Metacard sale. (*Id.* ¶ 47.) Despite earning over $23 million, Defendants did not use the funds to provide the promised benefits and perks of owning a Metacard. (*Id.* ¶ 55.) Rather, Defendants used the funds for their own personal benefit. (*Id.*) As months passed, Defendants failed to make progress on any of the promised business ventures and Metacard holders expressed frustration in the Full Send discord channel. (*Id.* ¶¶ 58, 64.)

Defendants did not simply fail to deliver on their promises, rather they never intended to perform them at all. (*Id.* ¶ 13.) Defendants' plan was to enrich themselves by diverting the vast majority of the $23 million raised from consumers and pocketing the proceeds, rendering performance of their promises economically impossible. (*Id.*) "The truth is revealed by the on-chain data: within just four months, the Metacard treasury had been drained from approximately 7,426 ETH on January 21, 2022, to only 258 ETH by April 11, 2022." (*Id.* ¶¶ 13, 85.) "Even though ninety-six and a half percent (96.5%) of the funds were drained from the project's wallet within the first four months, Defendants kept making material misrepresentations through their social media channels in order to continue [] earning the 10% royalty fee from the Metacard NFT trading on the secondary market." (*Id.* ¶ 14.) "Purchasers

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:25-cv-00161-FWS-DFM | Date: November 17, 2025 |
| Title: Trenton Smith v. John Shahidi *et al.* | |

who resold their Metacard on secondary marketplaces were subject to this royalty." (*Id.* ¶ 62.) "As a result, Defendants collected an additional 1,500 ETH (worth approximately $4.3 million dollar) from royalties on the secondary market." (*Id.* ¶ 63.)

Defendants arranged a few exclusive events such as a Snoop Dogg performance in April 2022 and private watch parties for Metacard holders. (*Id.* ¶¶ 65, 68.) For discounts and products, Defendants offered a 50% off coupon for Full Send branded supplements. (*Id.* ¶ 73.) Defendants also made a claim on social media that they gave away $250,000 worth of merchandise to Metacard holders, but Plaintiff did not receive any merchandise, product, or apparel. (*Id.* ¶ 74.) In March of 2022, Kyle announced that Full Send would open a sports bar with well-known Miami restauranteur Dave Grutman, who Kyle claimed owned the rarest of Metacards. (*Id.* ¶ 66.) The sports bar never opened. (*Id.*)

In April 2024, Defendants announced Metacard owners could join a "landmark initiative at the intersection of products, crypto, and digital assets that will help pave the way for the future of decentralized community ownership of real-world products." (*Id.* ¶ 109.) The "landmark initiative" involved the official launch of Defendants' "Bored Jerky" line of beef jerky products, which was announced as an "exclusive Metacard Holder Program." (*Id.* ¶ 113.) Under the Metacard Holder Program, Defendants represented that they "reserved 40% of Bored Jerky as a company for YOUR [Metacard holders'] benefit." (*Id.* ¶ 114.) For those who did not want to participate in the Program, Defendants stated they would refund the Metacard purchase price with interest. (*Id.* ¶ 118.) To obtain the refund, the Metacard holder was required to sign a "Token Rescission Agreement" with Metacard LLC, which provided that the Metacard holder would return all "Full-Send Metacard" blockchain-based tokens held by the Metacard holder in exchange for payment of $2,300. (*Id.* ¶ 119.) The offers described above were only available for thirty days—from May 20, 2024, to June 20, 2024—and were communicated through the OpenSea and discord channels that were largely unused by Defendants. (*Id.* ¶ 120.) Accordingly, the communication was not reasonably designed to reach Metacard purchasers, and not all Metacard purchasers saw the communication until after the thirty-day deadline passed. (*Id.* ¶ 121.) Once the deadline passed, Defendants discontinued any benefits of the Metacard and ceased pursuing any of the promised benefits of the Metacard, rendering the Metacard completely valueless and obsolete. (*Id.* ¶ 124.) In addition, Defendants failed to pursue Bored Jerky in good faith by adequately funding, staffing, and planning the business.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00161-FWS-DFM                                      Date: November 17, 2025
Title: Trenton Smith v. John Shahidi *et al.*

(*Id.* ¶ 127.) Bored Jerky was a simple rebranding of a pre-existing beef jerky company. (*Id.* ¶ 79.) More importantly, Defendants offered no equity in Bored Jerky to Metacard holders despite promising that holding a Metacard granted partnership into all Full Send business ventures. (*Id.*)

Plaintiff purchased a Metacard on January 19, 2022, for $2,300 after receiving and relying on the misrepresentations by Defendants. (*Id.* ¶ 132.) Specifically, Plaintiff listened to Defendants' podcast episode and watched Defendants' livestream. (*Id.* ¶ 131.) Later, Plaintiff viewed multiple of Defendants' post-release statements regarding Metacard project between January and March 2022. (*Id.* ¶ 133.) Thereafter, Plaintiff purchased a second Metacard on the secondary market on March 31, 2022, for $3,543.03 after reviewing, accepting, and relying on the misrepresentations from Defendants. (*Id.* ¶ 134.) In deciding to purchase the Metacard, Plaintiff relied on Defendants' statements regarding the benefits of owning a Metacard, including the access to merchandise, business opportunities and memberships. (*Id.* ¶ 135.) Plaintiff declined to participate in the Bored Jerky Program or Token Recission Agreement because he found both options unacceptable and continued to have hope that the Metacard project would come to fruition. (*Id.* ¶ 137.)

Plaintiff alleges claims against Defendants for (1) fraud, (2) violation of the California Legal Remedies Act ("CLRA"), and (3) civil conspiracy. (*See generally id.* ¶¶ 155-191.)

**II.     Legal Standard**

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). To withstand a motion to dismiss brought under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions" and "a formulaic recitation of the elements of a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00161-FWS-DFM                              Date: November 17, 2025
Title: Trenton Smith v. John Shahidi *et al.*

cause of action" such that the factual allegations "raise a right to relief above the speculative level." *Id.* at 555 (citations and internal quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (reiterating that "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). "A Rule 12(b)(6) dismissal 'can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

"Establishing the plausibility of a complaint's allegations is a two-step process that is 'context-specific' and 'requires the reviewing court to draw on its judicial experience and common sense.'" *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995-96 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679). "First, to be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Id.* at 996 (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). "Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* (quoting *Starr*, 652 F.3d at 1216); *see also Iqbal*, 556 U.S. at 681.

Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). On one hand, "[g]enerally, when a plaintiff alleges facts consistent with both the plaintiff's and the defendant's explanation, and both explanations are plausible, the plaintiff survives a motion to dismiss under Rule 12(b)(6)." *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 47 (9th Cir. 2022) (citing *Starr*, 652 F.3d at 1216). But, on the other, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Eclectic Props. E.*, 751 F.3d at 996 (quoting *Iqbal*, 556 at U.S. 678). Ultimately, a claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 at 556); *accord Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

---

**CIVIL MINUTES – GENERAL**                                                                                          6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00161-FWS-DFM                              Date: November 17, 2025
Title: Trenton Smith v. John Shahidi *et al.*

### III. Analysis

Defendants move to dismiss Plaintiff's claims on the basis that (1) the claims are barred by the refund offers, and that Plaintiff fails to adequately allege his claims for (2) fraud, (3) violation of the CLRA, and (4) civil conspiracy. (Mot. at 10-14.) The court addresses each argument in turn.

### A.   Refund Offers

Defendants argue that the refund offers bar Plaintiff's claims because Plaintiff saw the offer but declined to take it. (*Id.* at 13-14.) Plaintiff responds that he declined the refund offer because he thought the offer was unacceptable and continued to hold out hope that Metacard would come to life, and that Plaintiff seeks relief beyond what was offered. (Opp. at 17-18.)

The court finds Defendants fail to adequately demonstrate that the refund offers bar Plaintiff's claims at this stage of the proceedings. Plaintiff alleges that he "purchased a second Metacard on the secondary market on March 31, 2022[,] for $3,543.03 after reviewing, accepting and relying on the misrepresentation by Defendants." (SAC ¶ 134.) Plaintiff further alleges that Defendants financially benefited from this second purchase through the ten percent royalty clause embedded into the Metacard NFT smart contract. (*Id.* ¶ 11.) Yet Defendants allegedly offered only $2,300 per Metacard as a refund, approximately $1,200 less than what Plaintiff paid. (*Id.* ¶ 119.) Because Plaintiff alleges that the refund offer was inadequate and seeks damages beyond what was offered, the court finds that Defendants fail to adequately demonstrate Plaintiff's claims are barred by the refund offer at this stage of the proceedings. *See, e.g., In re MacBook Keyboard Litig.*, 2019 WL 6465285, at *8 (N.D. Cal. Dec. 2, 2019) (finding that defendant's repair program does not moot plaintiffs' claims because they seek relief beyond what the program offered); *Long v. Graco Children's Prods. Inc.*, 2014 WL 7204652, at *3-4 (N.D. Cal. Dec. 17, 2014) (denying motion to dismiss where Plaintiff provides evidence that a full refund was not offered); *Overton v. Bird Brain, Inc.*, 2012 WL 909295, at *4 (C.D. Cal. Mar. 15, 2012) (declining to determine whether plaintiff's claims are mooted by a recall and refund program at the motion to dismiss stage); *Fischer v. Comfrt LLC*, 2025 WL 1827769, at *8 (C.D. Cal. June 30, 2025) (finding that an email and letter offering monetary relief was insufficient to demonstrate plaintiff's claim was moot because there is no evidence

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:25-cv-00161-FWS-DFM | Date: November 17, 2025 |
| Title: Trenton Smith v. John Shahidi *et al.* | |

that the refund offer was accepted). Accordingly, the Motion is **DENIED** as to Defendants' arguments regarding the refund offer.

### B. Fraud

Under California law, "the elements of fraud that will give rise to a tort action for deceit are: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e. to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Engalla v. Permanente Medical Grp., Inc.*, 15 Cal. 4th 951, 974 (1997) (citation modified). Under Federal Rule of Civil Procedure 9(b), "[a] party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation modified). Claims subject to Rule 9(b) must allege the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Defendants argue that Plaintiff fails to allege (1) scienter or negligence, and (2) reasonable reliance on any statement between Plaintiff's first and second Metacard purchases. (Mot. at 10-13.)

### 1. Scienter or Negligence

Defendants argue that Plaintiff fails to sufficiently allege scienter or negligence, and that the transfer of funds among Defendants is an ordinary business operation. (*Id.* at 10-11.) Plaintiff responds that he adequately alleges scienter and negligence through allegations of failure to attempt performance, continued assurance after it was clear Defendants would not perform, and the immediate removal of Metacard funds. (Opp. at 8-14.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00161-FWS-DFM							Date: November 17, 2025
Title: Trenton Smith v. John Shahidi *et al.*

"[A]lthough the language of Rule 9 poses no barrier in itself to general pleading of fraudulent intent, *Twombly* and *Iqbal*'s pleading standards must still be applied to test complaints that contain claims of fraud." *Eclectic Props. E.*, 751 F.3d at 995 n.5. "In the context of this type of promissory fraud claim, alleging why the promise was false when made requires pleading facts from which it can be inferred that the promisor had no intention of performing at the time the promise was made. Mere nonperformance of a promise does not suffice to show the falsity of the promise." *UMG Recordings v. Glob. Eagle Ent.*, 117 F. Supp. 3d 1092, 1108 (C.D. Cal. 2015). "To be sure, fraudulent intent must often be established by circumstantial evidence." *Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18, 30 (1985). "[F]raudulent intent has been inferred from such circumstances as defendant's insolvency, his hasty repudiation of the promise, his failure even to attempt performance, or his continued assurances after it was clear he would not perform." *Id.* (citing Prosser, Torts § 109 (5th ed. 1984), pp. 764-65).

At this stage of the proceedings, the court finds that Plaintiff adequately alleges Defendants did not intend to perform at the time the promises were made. Plaintiff alleges on-chain data reveals that, within four months of the sale, "the Metacard treasury had been drained from approximately 7,426 ETH on January 21, 2022, to only 258 ETH by April 11, 2022." (SAC ¶¶ 13, 85.) Plaintiff further alleges that Defendants siphoned these funds into their own accounts, demonstrating that Defendants never reserved the capital to fulfill their promises, (*id.* ¶¶ 85-86), and continued to "hype" the Metacard to earn approximately $4.3 million from royalties, (*id.* ¶¶ 7, 9-11, 14, 56, 63, 87). The court finds such allegations sufficient because Defendants allegedly siphoned 96.5% of the funds within four months of the Metacard sale, leaving minimal capital left, and continued to market the Metacards to earn an additional $4.3 million from royalties without adequately providing the promised benefits. *See Tenzer*, 39 Cal. 3d at 30; *see also, e.g.*, *Master Replicas, Inc. v. Levitation Arts, Inc*, 2008 WL 11340280, at *3 (C.D. Cal. Sept. 4, 2008) (finding fraudulent intent sufficiently alleged where plaintiff alleges that defendants intended to induce plaintiff to enter the agreement and make advance royalty payments). Accordingly, the Motion is **DENIED** as to Defendants' arguments regarding scienter and negligence.

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. 8:25-cv-00161-FWS-DFM | Date: November 17, 2025 |
| Title: Trenton Smith v. John Shahidi *et al.* | |

### 2. Reasonable Reliance

Defendants argue that Plaintiff fails to allege falsity or reliance as to Defendants' alleged statements between Plaintiff's first and second Metacard purchases. (Mot. at 11-13.) Plaintiff responds that falsity and reasonable reliance were adequately alleged. (Opp. at 14-15.) To allege reliance in a fraud claim, plaintiffs must allege that "(1) that they actually relied on the defendant's misrepresentations, and (2) that they were reasonable in doing so." *OCM Principal Opportunities Fund, L.P. v. CIBC World Mkts. Corp.*, 68 Cal. Rptr. 3d 828, 855 (Cal. Ct. App. 2007). The court finds that Plaintiff adequately alleges reliance on the statements at issue. *See id*. Plaintiff alleges that he "consumed multiple of Defendant's post-release statements regarding the Metacard project between January and March 2022." (SAC ¶ 133.) Earlier in the Second Amended Complaint, Plaintiff alleges that Kyle made several post-release representations of Metacard's value. (*See, e.g.*, ¶¶ 57, 70, 94.) For example, Plaintiff alleges that Defendants announced, "Full Send would open a sports bar with well-known Miami restauranteur Dave Grutman, who Forgeard claimed owned the rarest of Metacards." (*Id.* ¶ 66.) However, the sports bar allegedly never opened. (*Id.*) Plaintiff further alleges that he "purchased a second Metacard on the secondary market on March 31, 2022 for $3,543.03 after reviewing, accepting and relying on the misrepresentation by Defendants." (*Id.* ¶ 134.) And finally, Plaintiff alleges that he relied on Defendants' statements regarding the benefits of owning a Metacard, including the access to merchandise, business opportunities, and memberships. (*Id.* ¶ 135.) Although these statements may be insufficient to adequately allege a false statement on their own, the court finds that Plaintiff adequately alleges false pre-sale statements that were relied for reasons discussed in the court's Prior Order, (*see* Dkt. 74 ("Prior Order") at 8-10). Accordingly, the Motion is **DENIED** as to Defendants' arguments regarding reasonable reliance.

### C. CLRA Claim for Equitable Relief

Defendants argues that Plaintiff fails to adequately allege a request for equitable relief under the CLRA. (Mot. at 13.) Plaintiff responds that he is not seeking injunctive relief. (Opp. at 15-16.) The court observes that the parties do not dispute that a request for equitable relief is

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00161-FWS-DFM                                              Date: November 17, 2025
Title: Trenton Smith v. John Shahidi *et al.*

not at issue in this matter.  Accordingly, the court **GRANTS** the Motion to the extent Plaintiff's CLRA claim is seeking equitable relief.[2]

### D.     Civil Conspiracy

Defendants argues that Plaintiff fails to adequately allege a civil conspiracy with particularity and an underlying tort.  (Mot. at 13.)  Plaintiff responds that he adequately alleges the underlying tort and civil conspiracy.  (Opp. at 16-17.)

"Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994).  Under California law, "[c]ivil conspiracy consists of three elements: '(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *Swipe & Bite, Inc. v. Chow*, 147 F. Supp. 3d 924, 935-36 (N.D. Cal. 2015) (quoting *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1581 (1995)).  "[T]here is no separate and distinct tort cause of action for civil conspiracy.  In other words, a civil conspiracy does not give rise to a cause of action unless an independent civil wrong has been committed." *Liberty City Movie, LLC v. U.S. Bank, N.A.*, 824 F. App'x 505, 508 (9th Cir. 2020) (citation modified).  A civil conspiracy claim must be alleged with particularity under Rule 9(b)'s heightened pleading standard where the claim sounds in fraud.  *Wasco Prods. v. Southwall Techs.*, 435 F.3d 989, 990-91 (9th Cir. 2006).  "'It is not enough to show that defendants might have had a common goal unless there is a factually specific allegation that they directed themselves towards this wrongful goal by virtue of a mutual understanding or agreement.'" *NetApp, Inc. v. Nimble Storage, Inc.*, 2015 WL 400251, at *8 (N.D. Cal. Jan. 29, 2015) (quoting *Alfus v. Pyramid Tech. Corp.,* 745 F. Supp. 1511, 1521 (N.D. Cal. 1990)).  "The existence of an agreement 'may be inferred from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators, and other circumstances.'" *Jones v. Hollywood Unlocked, Inc.*, 2022 WL

---

[2] However, the court finds that Plaintiff adequately alleges a CLRA claim for the same reasons the court finds that Plaintiff adequately alleges his fraud claim, *see* Section III.B, *supra*, and Prior Order at 7-10.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00161-FWS-DFM        Date: November 17, 2025
Title: Trenton Smith v. John Shahidi *et al.*

18674459, at *15 (C.D. Cal. Nov. 22, 2022) (quoting *117 Sales Corp. v. Olsen*, 80 Cal. App. 3d 645, 649 (1978)).

The court finds Plaintiff's allegations permit an inference that Defendants agreed on a plan to unlawfully enrich themselves. First, Plaintiff alleges that "Defendants' plan was to enrich themselves by diverting the vast majority of the $23 million raised from consumers." (SAC ¶ 13.) Second, Plaintiff alleges the "on-chain data" reveals that the Metacard treasury was drained within just four months of the Metacard sales. (*Id.* ¶¶ 13. 85.) Defendants allegedly pocketed these funds into their own accounts, rendering performance of their promises economically impossible. (*Id.*) Third, Plaintiff alleges that Defendants "kept making material misrepresentations through their social media channels in order to continue to earn[] the 10% royalty fee from the Metacard NFT trading on the secondary market" despite draining "the project's wallet within the first four months." (*Id.* ¶¶ 14, 85, 189.) The court finds such allegations permit an inference that Defendants formed a conspiracy to siphon funds from consumers by selling Metacards and continued making material misrepresentations about Metacard through social media channels to profit from royalties. *See Kidron*, 40 Cal. App. 4th at 1581; *117 Sales Corp.*, 80 Cal. App. 3d at 649. Accordingly, the court **DENIES** the Motion as to Plaintiff's civil conspiracy theory.

### E. Summary

In summary, the court finds that Defendants fail to adequately demonstrate the refund offers bar Plaintiff's claims at this stage of the proceedings. The court further finds that Plaintiff adequately alleges his fraud claim, particularly scienter, negligence, and reasonable reliance, and a civil conspiracy. However, the court **GRANTS** the Motion as to Plaintiff's CLRA claim to the extent it seeks equitable relief.

### IV. Disposition

For the reasons stated above, the court **GRANTS IN PART AND DENIES IN PART** the Motion. The court **GRANTS** the Motion to the extent Plaintiff's CLRA claim is seeking equitable relief. The court **DENIES** the Motion in all other respects. Defendants shall file an answer to the Second Amended Complaint on or before December 9, 2025.