| | |
|---|---|
| 1 | COOLEY LLP |
| | WILLIAM K. PAO (252637) |
| 2 | (wpao@cooley.com) |
| | ARIANA BUSTOS (345918) |
| 3 | (abustos@cooley.com) |
| | 355 S. Grand Avenue, Suite 900 |
| 4 | Los Angeles, CA 90071-1560 |
| | Telephone: (213) 561-3250 |
| 5 | Facsimile: (213) 561-3244 |
| 6 | BRIAN M. FRENCH (*pro hac vice*) |
| | (bfrench@cooley.com) |
| 7 | RONA S. LI (*pro hac vice*) |
| | (rproper@cooley.com) |
| 8 | KATHERINE BECHTEL (*pro hac vice*) |
| | (kbechtel@cooley.com) |
| 9 | 55 Hudson Yards |
| | New York, NY 10001-2157 |
| 10 | Telephone: (212) 479-6000 |
| | Facsimile: (212) 479-6275 |
| 11 | |
| 12 | LUKE C. CADIGAN (*pro hac vice*) |
| | (lcadigan@cooley.com) |
| 13 | 500 Boylston Street, 14th Floor |
| | Boston, MA 02116-3736 |
| 14 | Telephone: (617) 937-2300 |
| | Facsimile: (617) 937-2400 |
| 15 | *Attorneys for Defendants John Shahidi, Nelk, Inc., Metacard, LLC, Nelk USA, Inc., and Kyle Forgeard* |

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| TRENTON SMITH, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN SHAHIDI, NELK, INC., METACARD, LLC, NELK USA, INC., and KYLE FORGEARD<br><br>Defendants. | Case No. 8:25-cv-161-FWS-DFM<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE THE OPINIONS OF JEREMY CLARK**<br><br>Courtroom: 10D<br>Judge: Hon. Fred W. Slaughter<br>Date: February 12, 2026<br>Time: 10:00 a.m. (PST) |

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

MEM. OF POINTS & AUTH. IN SUPPORT OF
MOTION TO EXCLUDE CLARK OPINION
8:25-CV-161-FWS-DFM

# TABLE OF CONTENTS

Page

I. INTRODUCTION ....................................................................................... 1
II. BACKGROUND ......................................................................................... 1
III. LEGAL STANDARDS ............................................................................... 2
IV. ARGUMENT .............................................................................................. 3
    A. Clark's Proposed Class-Wide Damages Model Is Untethered To Plaintiff's Theory of Liability .......................................................... 3
    B. Clark's Proposed Methodology Is Too Vague To Satisfy *Daubert* ............................................................................................ 5
    C. Clark Lacks The Qualifications To Opine On Class-Wide Damages ........................................................................................... 6
V. CONCLUSION ........................................................................................... 7

## I. INTRODUCTION

Plaintiff's theory is that Metacard purchasers suffered harm when they did not receive promised benefits. Under that theory, damages turn on the value each purchaser received. But Plaintiff's damages expert, computer scientist Jeremy Clark, does not propose to measure that value. Instead, as if testifying in a different case altogether, Clark proposes a damages model based solely on purchase and sale prices—ignoring benefits, refunds, and any other value received. That disconnect is precisely what *Comcast* forbids, and it alone requires excluding Clark's opinion. Clark's opinion also fails because his methodology is impermissibly vague, and he lacks the expertise to opine on class-wide damages in any event.

Clark's damages opinion should be excluded.

## II. BACKGROUND[1]

Plaintiff's liability theory is that Metacard purchasers suffered harm because they allegedly received no value from the Metacard program. ¶¶12, 50, 163; *see* ¶31 ("[T]he only value Metacards provided was in the amenities, perks and opportunities to which the NFT was supposed to provide access."). Under that theory, damages turn on the value each purchaser received—whether through benefits, resale proceeds, refunds, or otherwise.

Plaintiff concedes that purchasers' experiences varied widely. Dkt. 99-2, Declaration of Rona S. Li, in Support of Opposition to Plaintiff's Motion for Class Certification ("Li Decl.") Ex. 1 (Trenton Smith Deposition Transcript Excerpts ("Smith Dep.")) at 146:14-17; Dkt. 99-4, Declaration of John Shahidi in Support of Opposition to Plaintiff's Motion for Class Certification ("Shahidi Decl.") ¶¶18-20. Some holders took advantage of multiple benefits, while others used none. ¶¶12, 65, 68, 74, 75, 95. Some received hundreds or thousands of dollars in value from their

---

[1] Unless otherwise noted, all emphasis is added, all internal citations, quotation marks, and alterations are omitted and "¶" refers to paragraphs of the Second Amended Complaint (Dkt. 80).

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

-1-

MEM. OF POINTS & AUTH. IN SUPPORT OF
MOTION TO EXCLUDE CLARK OPINION
8:25-CV-161-FWS-DFM

membership through cash, product giveaways, or the affiliate program. ¶¶75, 96; Shahidi Decl. ¶19. And in 2024, many purchasers accepted a refund with interest, totaling in more than $2 million. Shahidi Decl. ¶24; ¶¶110-112, 118-119.

To support class certification, Plaintiff offers the opinion of Jeremy Clark—a computer-science engineer with no expertise in economics, causation, or damages. Clark proposes to calculate class-wide "profits and losses" using only Metacard purchase and sale prices, assigning unsold Metacards zero value. Dkt. 94-2, Report of Jeremy Clark ("Clark Rep.") at 23. His proposed analysis does not account for program benefits or refunds.

### III. LEGAL STANDARDS

Expert testimony is admissible only if it results from reliable principles and methods reliably applied to the case's facts. Fed. R. Evid. 702.[2] An expert opinion must rest on a scientifically valid methodology, not unsupported speculation, and may not be "connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 590 (1993) (emphasis in original); *Obrey v. Johnson*, 400 F.3d 691, 696 (9th Cir. 2005). The proponent of the expert testimony bears the burden of establishing admissibility. *Lust ex rel. Lust v. Merrell Dow Pharms.*, 89 F.3d 594, 598 (9th Cir. 1996).

At class certification, these requirements apply with particular force. A damages opinion offered to support certification must be consistent with the plaintiff's liability theory and capable of measuring damages on a class-wide basis. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). If a damages model "does not even attempt to" measure damages attributable to the alleged theory of harm, it cannot establish that damages are susceptible of class-wide proof. *Id.* Nor may an

---

[2] Courts in this Circuit apply *Daubert* at the class certification stage. *See, e.g.*, *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1019 (C.D. Cal. 2018); *Klein v. Meta Platforms*, 766 F. Supp. 3d 956, 961 (N.D. Cal. 2025); *Senne v. Kansas City Royals Baseball Corp.*, 315 F.R.D. 523, 586 (N.D. Cal. 2016).

Cooley LLP
Attorneys at Law
Los Angeles (Downtown)

- 2 -

Mem. of Points & Auth. in Support of
Motion to Exclude Clark Opinion
8:25-cv-161-FWS-DFM

expert merely gesture at a general approach or promise a future model; the expert must articulate a concrete methodology and explain how it applies to the case. *Shin v. Sanyo Foods Corp. of Am.*, 348 F.R.D. 477, 484 (C.D. Cal. 2025).

## IV. ARGUMENT

Clark's damages opinion should be excluded because it offers a damages model untethered to Plaintiff's liability theory, fails to articulate a reliable methodology, and comes from a witness unqualified to opine on class-wide damages.

### A. Clark's Proposed Class-Wide Damages Model Is Untethered To Plaintiff's Theory of Liability

Clark's damages opinion fails under *Comcast* because it ignores Plaintiff's theory of harm. Plaintiff alleges that Metacard purchasers were injured because they received no value from the program. Under that theory, damages depend on the value each purchaser received through benefits, resale proceeds, refunds, or otherwise. That value can be substantial: Plaintiff himself received thousands of dollars in program benefits. Li Decl. Ex. 1 (Smith Dep. at 139:25-140:14, 129:17-131:7, 134:19-137:19); Shahidi Decl. ¶¶26-27. Yet Clark's model does not attempt to measure benefits or refunds.

Clark's entire class-wide "profit and loss" analysis consists of just three sentences:

> Provided with a class member's Ethereum address(es), time-stamped blockchain records can establish the purchase and/or sale prices (generally in ETH, convertible to USD using daily exchange rates) for each held NFT to establish a total profit or loss. Any unsold NFTs can be assigned zero or *de minimis* value. Standardized rules (*e.g.*, treatment of Ethereum gas, royalties, interest rates, exclusion of zero-value/self-transfers, and documented handling of gifts/OTC transfers) can be applied identically to all class members.

Clark Rep. at 23. Clark's model thus measures only what each purchaser paid and what they later sold for (if anything), assigning unsold Metacards a value of zero. It ignores program benefits, refunds, and any other source of value.

That approach fails as a matter of law. Plaintiff's theory is that purchasers paid for promised benefits they never received. ¶12. Measuring damages under that theory requires determining what each purchaser actually received and assigning value to it. *See Miller v. Fuhu Inc.*, 2015 WL 7776794, at *19 (C.D. Cal. Dec. 1, 2015) (fraud damages measured by "the difference between the value parted with and the actual value received"); *In re POM Wonderful LLC*, 2014 WL 1225184, at *3 (C.D. Cal. Mar. 25, 2014) (rejecting class-wide damages model for CLRA claims because it "ma[de] no attempt to account for benefits conferred upon Plaintiffs"); *Ang v. Bimbo Bakeries USA*, 2018 WL 4181896, at *13-14 (N.D. Cal. Aug. 31, 2018) (rejecting class-wide damages model for CLRA claims that "fail[ed] to take into account any value that the plaintiffs received" from Defendant). Clark does neither. He offers no method to identify which benefits any purchaser received, no method to value those benefits, and no explanation of how blockchain data could capture off-chain events, merchandise, access, or experiences. A damages model that ignores the alleged source of injury cannot satisfy *Comcast*.

Clark's model also fails because it ignores refunds that reduced or eliminated any alleged injury. Clark acknowledges that Defendants issued refunds with interest, and that those payments were processed through the banking system, not on the blockchain. Clark Rep. at 19. Yet his model neither identifies which purchasers received refunds nor accounts for the amounts paid. Because refunds bear directly on whether a purchaser suffered any loss, Clark's failure to account for them renders his opinion inconsistent with Plaintiff's liability theory. *See In re POM Wonderful LLC*, 2014 WL 1225184, at *3.

Clark effectively concedes these defects. He states that the profit-and-loss data he calculates "can be used as a common input to a class-wide damages model consistent with Plaintiff's liability theories *that might account for additional factors*." Clark Rep. at 23. But *Comcast* requires a damages model that *does* account for those factors—not one that could be constructed later. A promise—or here, a vague hint—

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

- 4 -

MEM. OF POINTS & AUTH. IN SUPPORT OF
MOTION TO EXCLUDE CLARK OPINION
8:25-CV-161-FWS-DFM

of future analysis is legally insufficient at class certification. *See Ward v. Apple Inc.*, 784 F. App'x 539, 541 (9th Cir. 2019) (affirming district court's denial of class certification where plaintiffs "provided only a promise of a [damages] model to come"); *Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 181 (N.D. Cal. 2015) ("The mere suggestion that more data could improve the model is insufficient, at least without any showing that the data is available.").

Because Clark's opinion fails to translate Plaintiff's legal theory into an analysis of economic impact, it must be excluded. *See Comcast*, 569 U.S. at 38; *LSIMC, LLC v. Am. Gen. Life Ins. Co.*, 2022 WL 4596597, at *12 (C.D. Cal. Aug. 4, 2022) (expert damages model failed under *Comcast* because it "fail[ed] to translate Plaintiff's legal theory of breach into an analysis of the breach's economic impact"); *Miller*, 2015 WL 7776794, at *18-22 (expert damages model failed under *Comcast* because plaintiff's expert was unable to provide a model that showed damages could be calculated on a class-wide basis).

### B. Clark's Proposed Methodology Is Too Vague To Satisfy *Daubert*

Even apart from its mismatch with Plaintiff's liability theory, Clark's proposed methodology fails under *Daubert* because it is too undeveloped to assess for reliability. Clark asserts that blockchain data "can" be used to calculate class-wide profits and losses—but never explains how. Clark Rep. at 23.

Clark claims that unspecified "standardized rules" "can be applied identically to all class members," yet he neither identifies those rules with any completeness nor explains how they would operate.[3] *Id.* Even the examples he lists—treatment of Ethereum gas, royalties, or off-chain transfers—are mentioned without any explanation of their mechanics or implementation. *Id.*

---

[3] Clark fails to establish even the threshold premise that the data his rules would require can be derived from blockchain records. For example, Clark proposes excluding "self-transfers" (*i.e.*, transfers between wallets owned by the same individual), but offers no method for identifying self-transfers—information that is not ascertainable from blockchain data given the anonymous nature of cryptocurrency wallets and transactions. Clark Rep. at 20.

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

- 5 -

MEM. OF POINTS & AUTH. IN SUPPORT OF
MOTION TO EXCLUDE CLARK OPINION
8:25-CV-161-FWS-DFM

That level of abstraction is insufficient under *Daubert*. An expert must articulate a concrete methodology that allows the Court to assess reliability, not merely gesture at a possible approach. Because Clark provides no meaningful explanation of how his analysis would be implemented, his opinion is "too vague" to permit the rigorous analysis *Daubert* requires. *Miller*, 2015 WL 7776794, at *22 (excluding expert testimony on class-wide damages where expert provided only a "few concrete details . . . regarding how he [would] conduct his hypothetical survey"); *see In re POM Wonderful*, 2014 WL 1225184, at *5 (court could not conduct the required "rigorous analysis" under *Daubert* "where there [was] nothing of substance to analyze").

### C. Clark Lacks The Qualifications To Opine On Class-Wide Damages

Clark's failure to offer a reliable class-wide damages model is unsurprising given his lack of relevant expertise. Clark is a computer-science engineer who teaches information-systems engineering. He has no academic training in economics, statistics, finance, or damages analysis. Clark Rep. at ECF pages 29-30. His publications concern blockchain technology—not economic loss, causation, or valuation. *Id.* at ECF pages 32-37. Nothing in his background qualifies him to opine on damages—much less class-wide damages in a case involving varied benefits, refunds, and purchaser experiences.

Courts routinely exclude damages opinions from experts with far more relevant credentials than Clark. An expert who lacks training or experience in economic analysis may not offer damages opinions merely by invoking general technical expertise. *See Min Prods. Pte. v. FireForge*, 2016 WL 11746288, at *2-3 (C.D. Cal. June 27, 2016) (excluding expert opinion where the expert did not have sufficient experience or education to opine on economic issues); *Caldwell v. City of S.F.*, 2021 WL 1391464, at *3-4 (N.D. Cal. Apr. 13, 2021) (expert's prior experience did not qualify him to testify about the economic damages plaintiff suffered).

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

- 6 -

MEM. OF POINTS & AUTH. IN SUPPORT OF
MOTION TO EXCLUDE CLARK OPINION
8:25-CV-161-FWS-DFM

## V. CONCLUSION

For these reasons, Clark's damages opinion should be excluded.

Dated: December 26, 2025

Respectfully submitted,

COOLEY LLP

/s/ *Brian M. French*
BRIAN M. FRENCH (*pro hac vice*)
(bfrench@cooley.com)
RONA S. LI (*pro hac vice*)
(rproper@cooley.com)
KATHERINE BECHTEL (*pro hac vice*)
(kbechtel@cooley.com)
55 Hudson Yards
New York, NY 10001-2157
Telephone: (212) 479-6000
Facsimile: (212) 479-6275

WILLIAM K. PAO (252637)
(wpao@cooley.com)
ARIANA BUSTOS (345918)
(abustos@cooley.com)
355 S. Grand Avenue, Suite 900
Los Angeles, CA 90071-1560
Telephone:  (213) 561-3250
Facsimile:   (213) 561-3244

LUKE C. CADIGAN (*pro hac vice*)
(lcadigan@cooley.com)
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
Telephone: (617) 937-2300
Facsimile: (617) 937-2400

*Attorneys for Defendants John Shahidi, Nelk, Inc., Metacard, LLC, Nelk USA, Inc., and Kyle Forgeard*

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

- 7 -

MEM. OF POINTS & AUTH. IN SUPPORT OF
MOTION TO EXCLUDE CLARK OPINION
8:25-CV-161-FWS-DFM

## L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants certifies that this brief contains 1,947 words, which complies with the word limit of L.R. 11-6.1.

Counsel further certifies that this brief is in compliance with the 10-page limitation set forth by footnote two in the Court's Modified Scheduling Order, filed September 23, 2025. Dkt. 78.

Dated: December 26, 2025         COOLEY LLP

/s/ Brian M. French
BRIAN M. FRENCH (*pro hac vice*)
(bfrench@cooley.com)
55 Hudson Yards
New York, NY 10001-2157
Telephone: (212) 479-6000
Facsimile: (212) 479-6275

*Attorneys for Defendants John Shahidi, Nelk, Inc., Metacard, LLC, Nelk USA, Inc., and Kyle Forgeard*