UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:25-cv-00161-FWS-DFM                                     Date: March 9, 2026
Title: Trenton Smith v. John Shahidi *et al.*

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

|  Rolls Royce Paschal   |   N/A   |
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiff:              Attorneys Present for Defendants:

Not Present                                                Not Present

**PROCEEDINGS: (IN CHAMBERS) ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, OR IN THE ALTERNATIVE, MOTION FOR CONTINUANCE PENDING COMPLETION OF CLASS DISCOVERY [94] AND DENYING DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF JEREMY CLARK [100]**

In this putative class action, Plaintiff Trenton Smith brings claims against Defendant Nelk, Inc. doing business as Nelk or Full Send, Defendant Nelk USA, Inc., Defendant Metacard LLC, Defendant Kyle Forgeard ("Kyle"), and Defendant John Shahidi ("John") (collectively, "Defendants") related to Plaintiff's Metacard purchases. (*See generally* Dkt. 80 ("Second Amended Complaint" or "SAC").) Before the court are two motions: (1) Plaintiff's Motion for Class Certification, or in the Alternative, Motion for Continuance Pending Completion of Class Discovery, (Dkt. 94 ("Motion for Class Certification" or "MCC")), and (2) Defendants' Motion to Exclude Opinions of Jeremy Clark, (Dkt. 100-1 ("Motion to Exclude Opinions" or "MEO")). These matters are fully briefed, (*see* Dkts. 95, 99, 102, 103), and the court held a hearing on these motions on February 12, 2026, (*see* Dkt. 105). Based on the state of the record, as applied to the applicable law, the Motion to Exclude Opinions is **DENIED**, and the Motion for Class Certification is **DENIED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00161-FWS-DFM                                        Date: March 9, 2026
Title: Trenton Smith v. John Shahidi *et al.*

## I.  Background

Plaintiff alleges the following.  Kyle and John are famous YouTube personalities known for their YouTube Channel "Nelk Boys" which gained a following of 8.22 million subscribers from its prank videos and podcasts.  (SAC ¶ 2.)  Following the success of their channel and podcast, Kyle and John developed a brand called "Full Send."  (*Id.* ¶ 3.)  The Full Send business venture at issue is Kyle and John's company Metacard, LLC.  (*Id.* ¶ 4.)

Metacard, LLC was created to sell digital assets that provide its holders access to business investment opportunities in ventures such as lounges, gyms, festivals, casinos, and restaurants, as well as access to products and services including apparel, virtual stores, virtual festivals, Metaverse casinos, and recording artists.  (*Id.* ¶¶ 4, 45.)  The digital assets were in the form of Full Send Metacard Non-Fungible Tokens ("Metacards").  (*Id.* ¶ 5.)  Non-Fungible Tokens ("NFTs") are a form of digital assets that can be purchased, sold, and transferred on other cryptocurrencies, such as the OpenSea NFT marketplace.  (*Id.* ¶ 6.)

On January 18, 2022, the day before the official release of Metacards, Kyle and John used their podcast to promote the sale of Metacards.  (*Id.* ¶ 33.)  On the same day, Defendants held a livestream attended by more than 240,000 individuals and posted on Instagram to promote the sale of Metacards.  (*Id.* ¶¶ 34-35.)  Instead of being a piece of digital art or collector's item, Defendants represented that Metacard would provide specific benefits to purchasers.  (*Id.* ¶ 38.)  For example, Metacard purchasers would have exclusive access to Defendants' current and future business endeavors.  (*Id.* ¶ 39.)  In addition, Defendants would provide exclusive access to merchandise, Nelk Boys content, including behind-the-scenes videos, bonus footage, and unreleased material, and invitations or early access to virtual meetings, live streams, or digital meetups with the Nelk Boys.  (*Id.* ¶¶ 40, 46.)  Metacard holders would have access to the Full Send and Nelk Boys community, including exclusive forums and chat groups with the Nelk Boys and other NFT holders, and discounts on Full Send branded merchandise such as clothing and accessories.  (*Id.* ¶ 46.)

On January 19, 2022, Defendants launched the Metacards (the "Mint"), selling all 10,000 NFTs within 10 minutes and earning over $23 million.  (*Id.* ¶ 53.)  Metacards were sold in OpenSea and were purchased using either regular credit cards or Ethereum.  (*Id.* ¶ 10.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00161-FWS-DFM                                           Date: March 9, 2026
Title: Trenton Smith v. John Shahidi *et al.*

Defendants embedded a ten percent (10%) royalty clause in the Metacard NFT smart contract. (*Id.* ¶ 11.)

Defendants arranged a few exclusive events such as a Snoop Dogg performance in April 2022 and private watch parties for Metacard holders. (*Id.* ¶¶ 65, 68.) For discounts and products, Defendants offered a 50% off coupon for Full Send branded supplements. (*Id.* ¶ 73.) Defendants also made a claim on social media that they gave away $250,000 worth of merchandise to Metacard holders, but Plaintiff did not receive any merchandise, product, or apparel. (*Id.* ¶ 74.) In March of 2022, Kyle announced that Full Send would open a sports bar with well-known Miami restauranteur Dave Grutman, who Kyle claimed owned the rarest of Metacards. (*Id.* ¶ 66.) The sports bar never opened. (*Id.*)

In April 2024, Defendants announced Metacard owners could join a "landmark initiative at the intersection of products, crypto, and digital assets that will help pave the way for the future of decentralized community ownership of real-world products." (*Id.* ¶ 109.) The "landmark initiative" involved the official launch of Defendants' "Bored Jerky" line of beef jerky products, which was announced as an "exclusive Metacard Holder Program." (*Id.* ¶ 113.) Under the Metacard Holder Program, Defendants represented that they "reserved 40% of Bored Jerky as a company for YOUR [Metacard holders'] benefit." (*Id.* ¶ 114.) For those who did not want to participate in this program, Defendants stated they would refund the Metacard purchase price with interest. (*Id.* ¶ 118.) To obtain the refund, the Metacard holder was required to sign a "Token Rescission Agreement" with Metacard LLC, which provided that the Metacard holder would return all "Full-Send Metacard" blockchain-based tokens held by the Metacard holder in exchange for payment of $2,300. (*Id.* ¶ 119.) The offers described above were only available for thirty days—from May 20, 2024, to June 20, 2024—and were communicated through the OpenSea and discord channels that were largely unused by Defendants. (*Id.* ¶ 120.) Plaintiff alleges claims against Defendants for (1) fraud, (2) violation of the California Legal Remedies Act ("CLRA"), and (3) civil conspiracy. (*See generally id.* ¶¶ 155-191.)

The court first considers Defendants' Motion to Exclude Opinions and then Plaintiff's Motion for Class Certification.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00161-FWS-DFM                                    Date: March 9, 2026
Title: Trenton Smith v. John Shahidi *et al.*

## II.     Motion to Exclude Opinions

Defendants move to exclude the opinions of Plaintiff's expert witness, Jeremy Clark, pursuant to Federal Rule of Evidence 702.  (MEO at 3.)[1]

### A.     Legal Standard

Federal Rule of Evidence 702 provides that a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."

Fed. R. Evid. 702.  The proponent of the expert bears the burden of proving admissibility.  *See Lust By & Through Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

At the class certification stage, "the relevant inquiry is a tailored *Daubert* analysis which scrutinizes the reliability of the expert testimony in light of the criteria for class certification and the current state of the evidence." *Rai v. Santa Clara Valley Transp. Auth.*, 308 F.R.D. 245, 264 (N.D. Cal. 2015) (citation modified); *see also Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 984-85 (9th Cir. 2020).  "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry," and "it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654-55 (9th Cir. 2006) (citation modified).  "Ultimately, the test under *Daubert* is not the correctness of the expert's conclusions but the

---

[1] All the citations refer to the CM/ECF pagination.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:25-cv-00161-FWS-DFM | Date: March 9, 2026 |
| Title: Trenton Smith v. John Shahidi *et al.* | |

soundness of [their] methodology. The court is a gatekeeper, not a fact finder. Accordingly, the district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022) (citations and internal quotation marks omitted). "A trial court has broad latitude not only in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011).

**B.    Analysis**

In the Motion to Exclude Opinions, Defendants argue (1) that Clark fails to articulate a reliable methodology, and (2) that he is unqualified. (MEO at 5.) The court considers each argument in turn.[2]

First, the parties dispute whether Clark's methodology is vague and underdeveloped. (MEO at 7-8; Dkt. 102 at 13-14.) The court finds Clark's testimony is the product of sufficiently reliable principles and methods for exclusion to be unwarranted. Fed. R. Evid. 702(c); *see Elosu*, 26 F.4th at 1024. Clark explains the Mint process, how the Metacards were created and assigned to the original owners, and the unique addresses that purchased the Metacards. (Dkt. 94-2 (Declaration of Jeremy Clark, "Clark Decl.") ¶ 3.1.) Clark begins his review of the blockchain activity associated with the Metacard by examining "archives of websites affiliated with the NFT with the Internet Archive." (*Id.*) Clark relied on datasets curated and offered through the Dune Analytics tool, finding data about Metacard's minting activity. (*Id.* ¶¶ 1.3, 3.1.) According to Clark, "[m]inting is the Ethereum-based activity of creating the new token ID and assigning it to the owner's address," and the "address of the entity that created the NFT collection [here] is 0x9E . . . C731" (the "Metacard treasury"). (*Id.*) And using this information, Clark can estimate the number of Metacard purchasers based on the number of unique Ethereum addresses that held a Metacard at some point, (*id.* ¶ 4.1), can trace the flow of funds between addresses related to these transactions, (*id.* ¶ 3.3), can separate out

---

[2] The court addresses Defendants' argument regarding Clark's proposed damages model being untethered to Plaintiff's liability theory in the court's analysis of the Motion for Class Certification, *see* Section III.B.1.c, *infra*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:25-cv-00161-FWS-DFM | Date: March 9, 2026 |
| Title: Trenton Smith v. John Shahidi *et al.* | |

secondary sales following the Mint, (*id.* ¶ 3.4), and can trace royalties earned from Metacard transfers, (*id.* ¶ 3.5).  For example, Clark describes the transfer history of the Metacard treasury which deployed the NFT collection, the Ethereum flowing out of this address, and its eventual depletion.  (*Id.* ¶ 3.3.)  Clark's explanation of the steps in his methodology, breakdown of his analysis, and description of the data he relies on provides sufficient assurance to the court in its gatekeeping capacity that exclusion is not necessary on the basis of unreliable methods.

Second, Defendants argue that Clark lacks the qualifications to opine about class-wide damages.  (MEO at 8.)  Plaintiff responds that Clark's qualifications support the information he provided which can be used as a foundation for Plaintiff's damages theory.  (Dkt. 102 at 14.)

As stated above, Rule 702 allows "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education [to] testify in the form of an opinion or otherwise" if certain other showings are made.  Fed. R. Evid. 702.  Here, the court finds that Plaintiff sufficiently demonstrates Clark's qualifications to testify as an expert.  Clark makes the following statements regarding his qualifications.  Clark is an associate professor at the Concordia Institute for Information Systems Engineering at Concordia University in Montreal, Canada.  (Clark Decl. ¶ 1.2.)  From 2019 to 2025, Clark held the National Sciences and Engineering Research Council of Canada/Raymond Chabot Grant Thornton/Catallaxy Industrial Research Chair in Blockchain Technologies.  (*Id.*)  Clark holds a Ph.D. in Computer Science from the University of Waterloo, awarded in 2011, and he is a professional engineer with the Professional Engineers of Ontario.  (*Id.*)  Clark has a decade of research expertise in digital assets (e.g., Bitcoin and Ethereum), blockchain, and related areas of cryptography, and 20 peer-reviewed papers on Bitcoin, Ethereum, digital assets, and blockchain technology.  (*Id.*)  Clark has also testified on digital assets to the Standing Senate Committee on Banking, Commerce and Economy of the Senate of Canada, and to the Standing Committee on Finance of the House of Commons of Canada.  (*Id.*)  Additionally, Clark has given over 50 presentations on digital assets to companies, government agencies, law enforcement, pension plans, and academic groups.  (*Id.*)  As evidenced by Clark's Declaration, the court finds Clark has sufficient experience regarding digital assets such that he may provide his opinions here.  Accordingly, the Motion to Exclude Opinions is **DENIED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:25-cv-00161-FWS-DFM                                   Date: March 9, 2026
Title: Trenton Smith v. John Shahidi *et al.*

### III.  Motion for Class Certification

Plaintiff moves to certify a class defined as follows: "All persons who purchased a Metacard through the date of class certification." (MCC at 13.) Plaintiff excludes the following individuals from the class: Defendants' officers and directors; any entity in which Defendants have a controlling interest; the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendants; members of the judiciary to whom this case is assigned, their families and members of their staff; and any individuals who signed the "Token Rescission Agreement" with Defendant Metacard LLC. (*Id.*)

#### A.  Legal Standard

Federal Rule of Civil Procedure 23 "enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010). Under Rule 23(a), a class may be certified if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These requirements are respectively referred to as numerosity, commonality, typicality, and adequacy. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997). In addition, as applicable here, Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A party seeking class certification "bear[s] the burden of demonstrating that they have met each of the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b)." *Ellis*, 657 F.3d at 979-80. The party "must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Food, LLC*, 31 F. 4th 651, 665 (9th Cir. 2022). A class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00161-FWS-DFM                                                    Date: March 9, 2026
Title: Trenton Smith v. John Shahidi *et al.*

action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23[] have been satisfied." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

    **B.**    **Analysis**

The court considers whether Plaintiff adequately demonstrates (1) commonality and predominance, and (2) typicality.

    **1.**    **Commonality and Predominance**

The court analyzes the commonality and predominance requirements under Rule 23(a)(2) and (b)(3) together which is consistent with the parties' briefing. (*See* MCC at 15, 17-21; Dkt. 99 at 12-20.); *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1121-22 (9th Cir. 2017) (jointly analyzing commonality and predominance).

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A common question is "capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. "By contrast, an individual question is one where members of a proposed class will need to present evidence that varies from member to member." *Olean*, 31 F. 4th at 663 (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). "[T]he key inquiry is not whether the plaintiffs have raised common questions, 'even in droves,' but rather, whether class treatment will 'generate common *answers* apt to drive the resolution of the litigation.'" *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 958 (9th Cir. 2013) (quoting *Dukes*, 564 U.S. at 350). The analysis "does not turn on the number of common questions, but on their relevance to the factual and legal issues at the core of the purported class' claims." *Jimenez v. Allstate Inc. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014). Even a "'single *significant* question of law or fact'" is sufficient. *Abdullah*, 731 F.3d at 957 (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012)).

Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00161-FWS-DFM　　　　　　　　　　　　Date: March 9, 2026
Title: Trenton Smith v. John Shahidi *et al.*

"Rule 23(b)(3)'s predominance inquiry 'is far more demanding' than Rule 23(a)'s commonality requirement." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1008 (9th Cir. 2018) (quoting *Amchem Prods.*, 521 U.S. at 623-24). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 577 U.S. at 453 (citation modified). "The main concern . . . is the balance between individual and common issues." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545-46 (9th Cir. 2013) (citation and internal quotation marks omitted). Each element of a claim need not be susceptible to class-wide proof, *Amgen*, 568 U.S. at 468-69, and the "important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class," *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Tyson Foods*, 577 U.S. at 453-54 (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123-24 (3d ed. 2005)).

"In order for the plaintiffs to carry their burden of proving that a common question predominates, they must show that the common question relates to a central issue in the plaintiffs' claim." *Olean*, 31 F. 4th at 665 (citing *Dukes*, 564 U.S. at 349-50). "Considering whether 'questions of law or fact common to class members predominate' begins . . . with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) (quoting Fed. R. Civ. P. 23(b)(3)).

　　a.　　**Elements of Underlying Claims**

Plaintiff alleges claims for violation of the CLRA, fraud, and civil conspiracy. (SAC ¶¶ 155-191.)

The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices . . . undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer are unlawful." Cal. Civ. Code § 1770(a).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00161-FWS-DFM     Date: March 9, 2026
Title: Trenton Smith v. John Shahidi *et al.*

The elements of a CLRA claim are: "(1) a misrepresentation; (2) reliance on that misrepresentation; and (3) damages caused by that misrepresentation." *In re Sony PS3 Other OS Litig.*, 551 Fed. Appx. 916, 920 (9th Cir. 2014) (citing *Marolda v. Symantec Corp.,* 672 F. Supp. 2d 992, 1002-03 (N.D. Cal. 2009)).

Under California law, "the elements of fraud that will give rise to a tort action for deceit are: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e. to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Engalla v. Permanente Medical Grp., Inc.*, 15 Cal. 4th 951, 974 (1997) (citation modified). To establish reliance in a fraud claim, "plaintiffs must show (1) that they actually relied on the defendant's misrepresentations, and (2) that they were reasonable in doing so." *OCM Principal Opportunities Fund, L.P. v. CIBC World Mkts. Corp.*, 68 Cal. Rptr. 3d 828, 855 (Cal. Ct. App. 2007).

"Under California law, there is no separate and distinct tort cause of action for civil conspiracy. In other words, a civil conspiracy does not give rise to a cause of action unless an independent civil wrong has been committed." *Liberty City Movie, LLC v. U.S. Bank, N.A.*, 824 F. App'x 505, 508 (9th Cir. 2020) (citation modified); *see also Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994) ("Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration.").

### b.     Class-wide Exposure and Uniform Statements

Plaintiff argues that there are common questions relating to Plaintiff's fraud and CLRA claims. (MCC at 19.) Plaintiff further argues that one of the questions will be whether Defendants' representations made in the podcast episode and livestream were false or misleading. (*Id.*) Plaintiff also argues that elements of civil conspiracy are primarily based on Defendants' actions and therefore do not vary from class members. (*Id.* at 21.)

Defendants respond that the Plaintiff cannot satisfy the commonality and predominance requirements because Plaintiff challenges a sprawling set of statements made from January through September 2022 across podcasts, livestreams, social-media posts on various accounts,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00161-FWS-DFM            Date: March 9, 2026
Title: Trenton Smith v. John Shahidi *et al.*

websites, and Discord channels. (Dkt. 99 at 13-14.) Defendants further argue that Plaintiff fails to provide evidence of how many proposed class members saw or heard any particular statement. (*Id.* at 14.) Defendants also respond that the statements themselves were not uniform. (*Id.* at 14-15.) And finally, Defendants respond that reliance on Defendants' statements may vary depending on the proposed class member's circumstances and connection to the Nelk Brand. (*Id.* at 15-17.)

Defendants raise the issue whether Plaintiff adequately demonstrates Defendants made uniform statements to the proposed class of "[a]ll persons who purchased a Metacard through the date of class certification." (MCC at 13.)

The Ninth Circuit has stated that "a case may be unsuited for class treatment if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed." *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1234 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1051 (2025) (citation and internal quotation marks omitted); *cf. id.* at 1235 (finding that a misrepresentation presents a common question where class members were exposed to "uniform misrepresentations about the potential reach of their advertisements"). When challenged statements were made "at different times [and] contained distinct terms, the question of whether a material misrepresentation was made to the entire class requires an individualized determination." *Berger v. Home Depot USA*, 741 F.3d 1061, 1070 (9th Cir. 2014). Furthermore, "[a] presumption of reliance does not arise when class members 'were exposed to quite disparate information from various representatives of the defendant.'" *Mazza*, 666 F.3d at 596 (citation modified); *cf. Opperman v. Kong Techs., Inc.*, 2017 WL 3149295, at *8 (N.D. Cal. July 25, 2017) (common questions of reliance predominate when the plaintiff can show exposure to a uniform, class-wide misrepresentation). Accordingly, the court considers whether Plaintiff demonstrates commonality and predominance through class-wide exposure to the challenged statements.

First, the court finds Plaintiff fails to adequately demonstrate class-wide exposure to the alleged misrepresentations. At the hearing on the Motion for Class Certification, Plaintiff stated that the evidence demonstrating the proposed class members saw and relied on the alleged statements was the short time between the alleged misrepresentations and the Metacard purchases. (Dkt. 105.) The court is not persuaded that this short time frame is sufficient to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00161-FWS-DFM                          Date: March 9, 2026
Title: Trenton Smith v. John Shahidi *et al.*

demonstrate class-wide exposure for a proposed class of *all persons* who purchased a Metacard through the date of class certification. Although Plaintiff asserts that 240,000 individuals attended Defendants' livestream promoting the Metacards, (MCC at 8), Plaintiff fails to provide evidence that the proposed class of all persons who purchased a Metacard were exposed to these statements. Even assuming *arguendo* that a short time frame between the alleged misrepresentations and purchases of Metacards could demonstrate class-wide exposure, this theory does not account for purchases of Metacards occurring weeks, months, or years after the Mint. Accordingly, the court finds Plaintiff fails to meet his burden in demonstrating the proposed class members were exposed to the alleged misrepresentations.

Second, the court finds that class treatment is not appropriate here because there is material variation in the challenged statements. *See DZ Rsrv.*, 96 F.4th at 1234. According to Plaintiff, Defendants' podcast and livestream emphasized that Metacard holders would be part of the Metacard Community and vote on Nelk projects. (Dkt. 94-3 (Declaration of Tom Kherkher) ¶¶ 9-10, Ex. A (Full Send Podcast Transcript), Ex. B (Livestream Transcript); SAC ¶¶ 41-42.) Plaintiff alleges that Metacard's launch page represented that holders would have exclusive access to what Full Send does in the physical and Metaverse, including lounges, gyms, festivals, casinos, restaurants, and more. (SAC ¶ 45.) Following the initial representations, Defendants "were getting more specific with the things that they were talking about doing" which included a statement about opening a sports bar in Miami. (Dkt. 99-2 (Deposition of Trenton Smith, "Smith Dep.") at 121:5-123:25.) The court finds that Plaintiff fails to demonstrate the challenged statements are suited for class treatment because these statements mention different benefits from owning a Metacard. The court further finds that there are individualized issues as to why a proposed class member purchased a Metacard for the same reason. *See, e.g., Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 2011 WL 7095434, at *9 (C.D. Cal. Dec. 12, 2011) ("Plaintiffs here cannot assume that one motivation for paying the First Recruitment Fee will 'fit all.' Class members may have varied significantly in their reliance on [d]efendants' misrepresentations."). Moreover, Plaintiff seeks to represent a broad class of all Metacard purchasers through the date of class certification, which raises individualized issues as to what statements were reasonably relied on at the time of purchase. *See, e.g., Philips v. Ford Motor Co.*, 2016 WL 7428810, at *16 (N.D. Cal. Dec. 22, 2016), *aff'd*, 726 F. App'x 608 (9th Cir. 2018).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00161-FWS-DFM                                                   Date: March 9, 2026
Title: Trenton Smith v. John Shahidi *et al.*

For similar reasons, the court finds that Plaintiff fails to demonstrate a presumption of reliance is warranted. The California Supreme Court has applied a presumption of reliance where there was a "long-term advertising campaign." *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009). To illustrate a "long-term advertising campaign," the California Supreme Court pointed to two California Court of Appeal decisions where there was evidence of a "decades-long campaign of the tobacco industry to conceal the health risks of its product while minimizing the growing consensus regarding the link between cigarette smoking and lung cancer and, simultaneously, engaging in saturation advertising targeting adolescents, the age group from which new smokers must come." *Id.* at 327-28. In another example, the Ninth Circuit has held that the defendant's "product brochures and TV commercials fall short of the 'extensive and long-term [fraudulent] advertising campaign' at issue in *Tobacco II*." *Mazza*, 666 F.3d at 596. The court finds that Plaintiff fails to demonstrate extensive and long-term campaigning, similar to those in *In re Tobacco II Cases*, because the challenged statements mention different benefits from owning a Metacard and occurred over a short time period relative to *In re Tobacco II Cases*. *See, e.g.*, *Hobbs v. Brother Int'l Corp.*, 2016 WL 4734394, at *4 (C.D. Cal. Sep. 8, 2016) (no presumption absent "evidence that [d]efendant made uniform representations to all customers").

        c.        **Damages Model**

Defendants argue that Plaintiff offers no administrable, class-wide method for calculating damages consistent with Plaintiff's liability theory. (Dkt. 99 at 17-18.) Defendants further argue that determining whether any class member was harmed—an in what amount—would require individualized inquiries that overwhelm common issues. (*Id.* at 18.) Plaintiff alleges that he "suffered actual injury in the form of damages and lost money for purchasing a worthless Metacard at an insanely inflated price." (SAC ¶ 140.) Plaintiff further alleges that "Metacard holders have seen nothing of the promised return on the $23 million investment they funded." (*Id.* ¶ 12.) Plaintiff also alleges that "[t]he only value Metacards provided was in the amenities, perks and opportunities to which the NFT was supposed to provide access." (*Id.* ¶ 31.) Based on these allegations and others, Plaintiff replies that damages may be calculated based on the purchase price of the Metacard. (Dkt. 103 at 10.)

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00161-FWS-DFM    Date: March 9, 2026
Title: Trenton Smith v. John Shahidi *et al.*

___

"The party seeking class certification under Rule 23(b)(3) must 'affirmatively demonstrate' the proposed class shares a common theory of liability as to each element of the cause of action." *Castillo v. Johnson*, 853 F. App'x 125, 126 (9th Cir. 2021) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)). "Because damages often vary among class members, the party seeking certification must develop a method for calculating damages on a class-wide basis that is reasonably administrable and 'consistent with its liability case.'" *Id.* (quoting *Comcast*, 569 U.S. at 35).

The court finds Plaintiff fails to adequately demonstrate a method for calculating damages on a class-wide basis that is reasonably administrable and consistent with Plaintiff's liability theory. *See id.* As Defendants point out, determining whether a proposed class member was harmed would require many individualized inquiries, such as when and how many Metacards were purchased, the Metacard's purchase price, the benefits received or available during the proposed class member's ownership of the Metacard, the value of the benefits provided, and potential resale profits or losses. (*See* Dkt. 99 at 18.) Put simply, "figuring out whether each individual putative class member was harmed would involve an inquiry specific to that person." *Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134, 1139 (9th Cir. 2022); *see id., e.g.*, (class certification improper where analysis would require comparing actual pre-accident value of the car to what each person was offered to determine whether offer was less than actual value); *see also Bowerman v. Field Asset Servs.*, 60 F.4th 459, 470 (9th Cir. 2023) (class certification improper where "individualized mini-trials" would be required to establish damages for each class member); *Ang v. Bimbo Bakeries USA, Inc.*, 2018 WL 4181896, at *13-14 (N.D. Cal. Aug. 31, 2018) (finding damages model does not satisfy Rule 23(b)(3) because the model "fails to take into account any value that the plaintiffs received from their consumption of [defendant's] products"). Furthermore, Clark's opinions and analysis do not account for the individualized variables to determine harm. Rather, Clark's methodology for establishing profits and losses from owning Metacards relies solely on the purchase and/or sale price for each Metacard. (Clark Decl. ¶ 4.4.)

For these reasons, the court finds Plaintiff fails to adequately demonstrate a method for calculating damages on a class-wide basis that is reasonably administrable and consistent with Plaintiff's liability theory. *See Miller v. Fuhu Inc.*, 2015 WL 7776794, at *19 (C.D. Cal. Dec. 1, 2015) ("In claims for common law fraud, damages are ordinarily measured by the difference

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00161-FWS-DFM                                          Date: March 9, 2026
Title: Trenton Smith v. John Shahidi *et al.*

between the value parted with and the actual value received." (citation and internal quotation marks omitted)); *Krueger v. Wyeth, Inc.*, 396 F. Supp. 3d 931, 949 (S.D. Cal. 2019) ("'Actual damage' pursuant to the CLRA is 'the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received.'" (quoting *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 675 (2006)); *In re POM Wonderful LLC*, 2014 WL 1225184, at *3 (C.D. Cal. Mar. 25, 2014) ("Because the Full Refund model makes no attempt to account for benefits conferred upon [p]laintiffs, it cannot accurately measure classwide damages."); *LSIMC, LLC v. Am. Gen. Life Ins. Co.*, 2022 WL 4596597, at *12 (C.D. Cal. Aug. 4, 2022) (expert damages model failed under *Comcast* because it "fail[ed] to translate [p]laintiff's legal theory of breach into an analysis of the breach's economic impact").

Because Plaintiff fails to adequately demonstrate class-wide exposure to uniform statements or a method for calculating damages on a class-wide basis, the court finds that Plaintiff fails to adequately demonstrate commonality and predominance. Accordingly, the court **DENIES** the Motion for Class Certification.

    2.    **Typicality**

Even though Plaintiff fails to adequately demonstrate commonality and predominance, the court also analyzes typicality.

Rule 23(a)(3) requires that the claims of the representative plaintiff be typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). To be considered "typical," the plaintiff's claims must be "reasonably co-extensive with those of absent class members" but "need not be substantially identical." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 729 (9th Cir. 2020) (citation and internal quotation marks omitted). The test for typicality is (1) "whether other members have the same or similar injury," (2) "whether the action is based on conduct which is not unique to the named plaintiffs," and (3) "whether other class members have been injured by the same conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation and internal quotation marks omitted). Class certification is improper when the named plaintiff "is subject to unique defenses which threaten to become the focus of the litigation." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The Ninth Circuit has held that "a named plaintiff's motion for class certification should not be granted if

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00161-FWS-DFM                                  Date: March 9, 2026
Title: Trenton Smith v. John Shahidi *et al.*

there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Id.* at 508 (citation and internal quotation marks omitted); *see also Ellis*, 657 F.3d at 984; *Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1321 (9th Cir. 1997) ("Thus, when named plaintiffs are subject to unique defenses which could skew the focus of the litigation, district courts properly exercise their discretion in denying class certification.").

Plaintiff argues that his claims are typical of the class claims because Defendants' pre-sale messages were uniform across different platforms and were the primary sources of information regarding the Metacard sale. (MCC at 15-17.) Defendants respond that Plaintiff's claims are not typical of the class claims because Plaintiff received thousands of dollars in benefits from the Metacard program, Plaintiff was an avid supporter of the Nelk Boys, Plaintiff was exposed to a materially different and broader universe of information than many class members, Plaintiff purchased a second Metacard, and Plaintiff admits he actually saw the rescission offer within 24 hours of its announcement and declined it. (Dkt. 99 at 21-24.)

The court finds that Plaintiff fails to sufficiently demonstrate Plaintiff is typical of a proposed class member who purchased a Metacard. As Defendants point out, Plaintiff received substantial benefits from his Metacard ownership. For example, Plaintiff attended the Christmas Day National Football League game at SoFi Stadium in a Metacard sponsored VIP box—free of charge. (Smith Dep. at 129:17-130:7; Dkt. 99-4 (Declaration of John Shahidi, "Shahidi Decl.") ¶ 27.) Plaintiff also brought a guest as a plus one to the VIP box. (Smith Dep. at 132:13-15.) Defendants estimate the value of those box seats alone being over $3,000. (Shahidi Decl. ¶ 27.) Plaintiff also received tickets to a Snoop Dogg concert, $100 Happy Dad gift card, and free merchandise. (Smith Dep. at 76:9-78:25, 134:19-137:19, 139:25-140:14, 167:11-20.) Plaintiff admits that "most Metacard members did not get any of those things" and Plaintiff was one of the "few people that was able to have" "any type of perk." (*Id.* at 146:14-17.) Moreover, Plaintiff did not purchase the Metacard until a few months after the Mint—at which point, most Metacard purchases already occurred. (Dkt. 94-5 (Declaration of Trenton Smith) ¶¶ 13, 15; Clark Decl. ¶¶ 3.1, 3.4.) By the time Plaintiff purchased the Metacard, there was additional public information on the Metacard program, including announcements regarding sports games. (Smith Dep. at 79:25-80:16, 123:13-22; Shahidi Decl. ¶¶ 15-17.) Plaintiff also claims that he heard about the Metacard months before the Mint, whereas the earliest statements class members were allegedly exposed to were made one day

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00161-FWS-DFMDate: March 9, 2026
Title: Trenton Smith v. John Shahidi *et al.*

before the Mint, and Plaintiff was interested in potentially buying the Metacard based on these earlier statements. (Smith Dep. at 56:24-58:4.) Plaintiff's circumstances suggest that Plaintiff did not rely upon the same statements as the proposed class members, but Plaintiff relied on other statements outside the scope of Plaintiff's case. Defendants will spend time exploring these issues during trial, possibly to the detriment of the class. *See, e.g.*, *Park v. Webloyalty.com, Inc.*, 2019 WL 1227062, at *12 (S.D. Cal. Mar. 15, 2019) ("While [plaintiff] may prevail on this defense, [defendant's] focus on it shows it will be litigated. While the defense is not unique to him—all other class members will also have to show their claims are timely—the facts of his defense are unique. He will likely be forced to expend time and effort on this, possibly to the detriment of the class."); *Nghiem v. Dick's Sporting Goods, Inc.*, 318 F.R.D. 375, 383 n.4 (C.D. Cal. 2016) ("It does not matter whether Defendants will ultimately prevail on these defenses. What matters is that Defendants will assert these defenses, and they have a factual basis for doing so."). Accordingly, the court finds the benefits conferred to Plaintiff and his unique circumstances render him "subject to unique defenses" and not sufficiently typical of the proposed members of the class he seeks to represent. *Hanon*, 976 F.2d at 508.[3]

      **C.**     **Requests for Additional Time to Conduct Class Discovery and Leave to Resubmit Motion for Class Certification**

Plaintiff argues that, if the court disagrees that class certification is appropriate here, the court should grant additional time to conduct discovery and resubmit the request for class certification. (MCC at 22-26.) In support, Plaintiff describes several discovery requests made such as Interrogatory No. 3 which requests the identity of each purchaser of the Metacard and their contact information, Interrogatory No. 7 which details the breakdown of the amount of money and cryptocurrency raised from the sale of Metacards and how the funds were distributed, and Interrogatory No. 2 which requests documentation regarding the ownership or structure of Defendants. (*Id.* at 24-25.) And finally, Plaintiff requests discovery of key decision makers on the Metacard project. (*Id.* at 25.) Defendants respond that Magistrate Judge

---

[3] Because the Motion for Class Certification is denied for failure to adequately demonstrate commonality and predominance, and typicality, the court declines to address the remaining requirements.

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:25-cv-00161-FWS-DFM | Date: March 9, 2026 |
| Title: Trenton Smith v. John Shahidi *et al.* | |

Douglas F. McCormick already rejected these requests and that Plaintiff offers no basis to revisit Magistrate Judge McCormick's ruling. (Dkt. 99 at 27.)

A court's scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see* C.D. Cal. L.R. 16-14 ("Any application to modify an order entered pursuant to F.R.Civ.P. 16 shall be made to the judicial officer who entered the order."). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)). "The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension." *Johnson*, 975 F.2d at 609 (citation and internal quotation marks omitted). "While a court may take into account any prejudice to the party opposing modification of the scheduling order," *In re W. States*, 715 F.3d at 737, the focus of the Rule 16(b) inquiry "is upon the moving party's reasons for seeking modification," *id.* (quoting *Johnson*, 975 F.2d at 609). If that party "was not diligent, the inquiry should end." *Id.* (quoting *Johnson*, 975 F.2d at 609). "The district court is given broad discretion in supervising the pretrial phase of litigation, and its decisions regarding the preclusive effect of a pretrial order . . . will not be disturbed unless they evidence a clear abuse of discretion." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).

The court finds Plaintiff fails to adequately demonstrate that the court should grant Plaintiff's requests for additional time to conduct class discovery and to resubmit the request for class certification. As an initial matter, the court finds that Plaintiff fails to adequately demonstrate Magistrate Judge McCormick's rulings regarding Plaintiff's discovery requests were incorrect. As Defendants point out, Plaintiff fails to provide a basis for revisiting Magistrate Judge McCormick's ruling. (*See* Dkt. 99 at 27.) The court also finds Plaintiff fails to sufficiently demonstrate how these categories of discovery are sufficiently related to the issues regarding class certification, as described in this Order. The court further finds that Plaintiff fails to demonstrate additional time for class discovery or leave to resubmit the motion for class certification is appropriate. The deadline to file a motion for class certification was November 13, 2025. (Dkt. 78.) According to Defendants, the parties met and conferred regarding discovery issues and Defendants asked Plaintiff to identify the necessary discovery for the Motion for Class Certification as early as September 9, 2025. (Dkt. 99-1 (Declaration of

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. 8:25-cv-00161-FWS-DFM | Date: March 9, 2026 |
| Title: Trenton Smith v. John Shahidi *et al.* | |

Rona S. Li) ¶ 5.) Defendants state that Plaintiff only identified Interrogatory No. 3 as necessary, and Defendants served supplemental responses to Interrogatory No. 3 on September 22, 2025. (*Id.* ¶¶ 5-6.) Where, as here, "the party seeking the modification was not diligent, the inquiry should end and the motion to modify should not be granted." *Johnson*, 975 F.2d at 610. Accordingly, the court **DENIES** Plaintiff's requests for additional time for class discovery and for leave to resubmit the request for class certification.

## IV. Disposition

For the reasons stated above, the court **DENIES** both the Motion to Exclude Opinions and the Motion for Class Certification.